ANTHONY CALIENDO, Plaintiff-Appellant, v. PAUL W. GOODRICH, of the Chicago Police Board, et al., Defendants-Appellees.

(No. 61006; 

First District (3rd Division)—November 20, 1975.

Rehearing denied January 9, 1976.

Gertz & Giampietro, of Chicago, and George Bakalis, of Bensenville, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Anthony Caliendo, a Chicago policeman, was charged with violating Rule 2 of the Police Department which prohibits:

"Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department."

After a hearing before the Chicago Police Board, he was discharged from service. In a suit brought by him for administrative review, the Circuit Court affirmed the board's decision. Caliendo has appealed contending (1) that Rule 2 is unconstitutionally vague and overbroad; (2) that the board was without jurisdiction to try him because the charge was not officially preferred within 30 days of his suspension and was not heard until approximately 10 months after the 30-day period had elapsed; (3) that the board denied him a fair hearing by refusing to allow into evidence a deposition of a key witness who was unavailable to testify, and (4) that the evidence did not constitute cause for his dismissal from the police force. Because we fully concur with the last contention, it is unnecessary to consider the first three.

The charge against Caliendo arose from his involvement in an altercation with a Florida resident named Daniel Ash, during which his revolver discharged wounding Ash and himself. As a result of this incident, he was accused of aggravated assault and tried for that felony in the Circuit Court of Broward County, Florida. The court found that evidence did not support the charge and directed a verdict of not guilty at the close of the State's case.

In the spring of 1972, Caliendo arrived in Fort Lauderdale to spend his furlough in Florida. He was accompanied by a friend, Ronald Lawicki. On the night of April 2 they were motoring around the Fort Lauderdale area in a Corvette, owned and driven by Lawicki. They went to dinner around 10 p.m. and after that stopped at two lounges where Caliendo had four drinks of scotch whisky. They then drove to a restaurant for breakfast. It was 4 a.m., and as they were proceeding along the highway a black Mustang, with three occupants, pulled up along-

side of them at a stoplight. The driver of the Mustang accelerated its engine in such a manner that Caliendo inferred that the occupants wanted to race. In response to this action, Lawicki accelerated the Corvette's motor. However, both drivers let their engines idle down and when the light turned green they proceeded normally for a short distance. Without warning, the Mustang cut Lawicki's car off, forcing him to steer into the outermost lane to avoid a collision. Lawicki then cut the Mustang off. This sequence of events was repeated two or three times. While this was taking place, Caliendo told Lawicki to stop the dangerous maneuvers and pull over so that the Mustang would pass them. When the Mustang again cut off the Corvette, the cars were on a bridge over a canal. Because he feared that the Corvette was going to be forced off the bridge and into the water, Caliendo once more asked Lawicki to pull over to the side of the road. Lawicki complied with the request.

Caliendo testified at the hearing that he was afraid of what the occupants of the Mustang might do next and that he started to reach for his revolver and his badge, which would identify him as a police officer. The Corvette had bucket seats so he had to lean forward to get his badge out of his left hand pants pocket and to retrieve his revolver, which was in its holster on his left side. As he bent forward, Daniel Ash, an occupant of the Mustang, approached the Corvette, leaned through the rolled-down passenger window and began striking him on the head. Caliendo testified that as he reached for his revolver, Ash grabbed his hand and forcibly removed the weapon from his holster. During the ensuing struggle for the gun it was discharged three times. One of the first two shots chipped a bone in Caliendo's knee and the other went through the floor of the Corvette. The third shot penetrated Ash's left arm.

In a signed statement, given to an investigator of the Chicago Police Department 11 days after the altercation, Caliendo did not mention a struggle for the gun. He said that when the man from the Mustang came to the side of the Corvette and began punching him, he heard a shot and thought the man was shooting at him and Lawicki, so he turned and fired a shot out of the window. He was under the impression two shots had been fired—the one the assailant fired at him and the one he fired back—until the shooting was reconstructed by him and the Fort Lauderdale police. He stated he now knew the first two shots were fired while he was pulling out his revolver and the third was when "I fired at him."

Caliendo admitted in his testimony that he did not tell the Florida police about the fight for possession of the gun. He explained on cross-examination that he did not remember the struggle then or at the time

his written statement was taken by the investigator, but that it definitely had taken place. He testified that at no time did he point his revolver out the window of the Corvette, aim, and fire at Ash as he fled, but stated that all three shots were fired inside the automobile. He also stated that after the shooting he stepped out of the Corvette before Ash reentered the Mustang; that he had the revolver in his hand and could have easily shot Ash if that had been his intention.

Caliendo, who had been a member of the Chicago Police Department for 10 or 11 months at the time of the incident, also testified on cross-examination that he attempted to remove his revolver and identify himself as a policeman because the instructions that he had received at the police academy dictated that he follow this procedure when he believed his life was in danger, and that he feared for his life because the driver of the Mustang had tried to force Lawicki's car into the canal.

Only one witness testified against Caliendo, the investigator who transcribed his statement. Caliendo testified on his own behalf and attempted to introduce into evidence a deposition which had been taken from Ash in preparation for the Florida trial. The hearing officer refused to admit the exhibit when an objection was made to it by the attorney for the police department.

■■■ The pivotal question presented is not whether the board's decision was against the manifest weight of the evidence but whether under that evidence there was sufficient cause to remove Caliendo from the police department. Section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.1) provides that "no officer of the police department * * * may be removed or discharged, * * * except for cause * * *." Inasmuch as the statute does not define "cause," it is a police board's responsibility to evaluate the seriousness of an officer's conduct and to decide if it constitutes adequate cause for removing him from the police force. A board's decision as to cause will not be reversed as long as it is related to the requirements of the service and not so trivial as to be unreasonable. However, while the findings of an administrative agency on questions of fact are prima facie true and correct (Ill. Rev. Stat. 1973, ch. 110, par. 274), this is not so as to its findings of cause. A board's finding that there is sufficient cause for discharge is subject to judicial review. *Crowell v. Police Board* (1975), 32 Ill.App.3d 552, 336 N.E.2d 573.

■■ This court has defined cause as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good reason for his no longer

holding his position. (*Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill.App.2d 31, 234 N.E.2d 339.) It is apparent from this record that there was not enough evidence, introduced by the police department, to support the board's finding that there was cause for the maximum punishment imposed on Caliendo. First, there is no intimation that the regulations of the board prohibit an officer from carrying his service revolver when off duty or while on furlough. Second, there is no suggestion that Caliendo violated any department regulation by his conduct before the altercation. Although he may have been foolhardy in having a gun on his person, and indiscreet in drinking and staying up all night, no question is raised as to the propriety of his lifestyle while he was in Florida or as to his sobriety at the time Ash assaulted him. Third, the only complaint about him concerns his actions while he was seated in the Corvette and the only proof of what took place there came from Caliendo himself. Whether his testimony or his statement is accepted, it is certain that Ash was the aggressor. Ash was wounded in the encounter, but so was Caliendo. Since Ash precipitated the assault, Caliendo had the right to defend himself. That he did this in a legal manner is attested by the result of the trial. He was arrested by Florida authorities but he was found not guilty of a criminal offense. A verdict of acquittal was directed in his favor after the prosecution presented all its evidence, including the testimony of Ash.

At the hearing, the police department produced no witnesses of its own other than the investigator who took Caliendo's statement. Ash did not testify and neither did his companions nor any Florida police officer. Indeed, the department objected to the admission into evidence of a certified copy of a pretrial deposition taken from Ash. The deposition would have thrown some light on the events in the Corvette, and the objection, whether legally sound or not, raises the suspicion that the deposition was unfavorable to the department's position which is that after the initial assault, Caliendo pointed his gun out of the Corvette's window and fired at Ash as he fled to the Mustang. This is a possible inference from Caliendo's statement, but it is a strained inference and one that is against the manifest weight of the evidence.

■■ A defendant before an administrative agency is entitled to have that body base its decision upon evidence received at the hearing. If the record of the hearing does not disclose evidentiary support for the agency's finding, the reviewing court must set aside the agency's order. Since the record does not support the board's conclusion that cause existed for Caliendo's discharge, the judgment of the Circuit Court upholding the decision of the board is reversed. The cause is remanded

with directions to reverse the board's decision, to order the plaintiff's reinstatement and to consider his prayer for salary reimbursement.

Reversed and remanded with directions.

McGLOON, P. J., and McNAMARA, J., concur.