ANTHONY KREISER, Plaintiff-Appellant, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 61523

Opinion filed July 13, 1976.

O'Brien and Coleman, of Chicago (Martin J. Healy, Jr., of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Ann Acker, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Plaintiff Patrolman Anthony Kreiser was discharged from the Chicago Police Department (Department) after a hearing by the Chicago Police Board (Board) for violating certain rules of the Department. He filed a petition for administrative review (Ill. Rev. Stat. 1971, ch. 110, pars. 264-279) in the Circuit Court of Cook County. This appeal by plaintiff follows a denial of his petition. Plaintiff appeals from the circuit court's affirmance.

A police officer may be discharged for cause. (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—18.)[1] The Board found cause in that in five specific instances plaintiff violated Rule 2, a general rule of the Department, which prohibits:

"Any action or conduct which impedes the department's efforts to achieve its policy and goal or brings discredit upon the department."

The questions before the court are (1) whether the evidence supports the findings of the Board and, (2) if so, do they present sufficient cause to warrant a discharge.

The specific findings of the Board were:

(1) Plaintiff violated Rule 2 because on various dates in April, 1972 he failed to have his personal vehicle properly licensed under state statutes and city ordinances and drove the vehicle while unlicensed.

(2) Plaintiff violated Rule 2 by violating Rule 6 which provides that an officer must obey an oral order. The order was by Lt. Brown to submit a written report to explain certain conduct of plaintiff on April 12, 1972.

(3) Plaintiff violated Rule 2 by violating Rule 13 which provides that a false written or oral report should not be made. Plaintiff falsely stated to a superior officer that he had not driven his personal vehicle while it was unlicensed.

(4) Plaintiff again violated Rule 2 by violating Rule 13 by falsely stating to a superior officer that he was "on his lunch break" when

---

[1] "Except as hereinafter provided in this section, no officer or employee in the classified civil service of any municipality who is appointed under the rules and after examination, may be removed or discharged, or suspended for a period of more than 30 days, *except for cause* upon written charges and after an opportunity to be heard in his own defense ° ° ° ." (Emphasis added.)

in fact he had not made any notification or obtained permission from a superior officer for a lunch break.

(5) Plaintiff violated Rule 2 by violating Rule 29 which provides that an officer cannot leave a duty assignment without being properly relieved or without a proper authorization by leaving his duty assignment without proper authorization by not logging out for traffic court.

The testimony on the substantive issues before the Board was from Lt. Harold W. Brown for the Department and from the plaintiff on his own behalf. In addition to that there were certain stipulations and reputation witnesses.

On April 12, 1972, at roll call before the morning shift, plaintiff told Lt. Brown that he was due at traffic court that day at 1 o'clock. Lt. Brown testified that Fillmore District (not Departmental) procedure required that an officer must sign out on a log sheet maintained by the desk sergeant before leaving the station for traffic court. Although there is no definite rule or regulation on travel time, an officer who must appear in traffic court is allowed approximately 45 minutes traveling time from the 11th District to traffic court. The Fillmore District is located 1100 South and 4000 West; traffic court is at 321 North LaSalle Street. The officer should check into court about 15 minutes before the time he is due to appear. He may use public transportation or his personal vehicle.

Lt. Brown further testified that an officer is allowed 30 minutes for lunch. If he is actively assigned to a car, Departmental regulations require that he advise the Central Communications Room when he is going to lunch, but if he is in the station "* * * he should inform the Watch Commander * * * . Actually he could advise the supervisor or anyone. Being in the station, the Watch Commander being the commanding officer at the time, he should be advised of the whereabouts of his personnel."

Plaintiff testified that he informed his partner, Officer Romano, he was going to lunch and traffic court. Romano did not testify. Plaintiff did not sign out at the police station in the log book. Plaintiff testified that he left the station at 11:10.

The stipulation shows that Inspector Walsh of the Department found plaintiff in a vehicle at 3904 South Western at about 12:05; the vehicle did not have the city's registration nor did it contain a front license plate; plaintiff told Walsh that he was on his lunch period. Plaintiff testified he logged in at traffic court at 12:40 and logged out at 4:20 and that he did not return to the station that afternoon because his tour of duty ended at 4:30. It was also stipulated that plaintiff's automobile did not have a license plate on the front although it did have one on the rear and that the city sticker was not affixed to the windshield, although plaintiff had purchased

the license plates and city sticker prior to April of 1972. It was further stipulated that plaintiff's car had been damaged in the front end and was being repaired. Plaintiff testified that the windshield was replaced prior to this incident, and a new front end was put on a short time later.

Lt. Brown originally testified that on that same day, April 12, plaintiff reported back to work after he had been in court. On cross-examination Lt. Brown said that perhaps it was not on the afternoon of the 12th but on the afternoon of the 13th that he told plaintiff to submit a report relative to his actions of the 12th. That report was to explain why plaintiff had not signed out for court, where he had gone, and why he had left his assigned post that early. Lt. Brown further testified that the following morning, the 14th, after roll call he asked plaintiff if he had submitted his written report and plaintiff stated that he had not. An hour after that encounter Lt. Brown told him to submit his report. Approximately one-half hour after that Lt. Brown said, "again I instructed him and more or less ordered him to get the report done and out on the street."

Plaintiff testified that Lt. Brown told him around 4 in the afternoon of the 13th, near the end of plaintiff's tour of duty, to submit a report regarding the incident of the prior day and to give it to Lt. Brown after plaintiff's tour of duty that day. Plaintiff said that after handling a traffic accident report which took him past his eight-hour tour he asked the desk personnel about 5 p.m. if Lt. Brown was around and was told that he had left for the day. Plaintiff did not submit the report because he was told to give it to Lt. Brown personally. The following morning, the 14th, Lt. Brown again told plaintiff to submit the report. Plaintiff testified that, while in the process of preparing the report, he was interrupted by other police personnel a number of times. Plaintiff said that Lt. Brown saw him engaged in conversation with other officers and ordered him to sit down and complete the report and "not to get off the table until I do."

The first finding was that plaintiff failed to have his personal vehicle "properly licensed" under the statute, and he drove the vehicle while "unlicensed." It is true that the vehicle did not have the front license plate affixed and perhaps in a sense the vehicle was "unlicensed." The gravity of the charge is another matter. Plaintiff had both his license plates and city vehicle sticker prior to this date. The rear plate was affixed, but the front was not because the front end of the car was damaged. The windshield had only recently been replaced and the vehicle sticker had not as yet been put on.

The second finding related to the failure to obey an oral order to submit a written report to Lt. Brown. Under the evidence as adduced it may be said that plaintiff failed to obey this order promptly, but he did submit the report. The circumstances do not indicate any neglect or wilfulness. Plaintiff was engaged in other duties on the 13th and it does not appear

that Lt. Brown had given this report high priority. Lt. Brown's testimony at one point was that, after telling Kreiser to submit the report, he finally, on the 14th, "more or less ordered him" to get the report done.

The third finding was that plaintiff made a false report by stating to his superior officer that he had not driven his personal vehicle while it was unlicensed. Plaintiff admitted that he told Lt. Brown that he had not driven the vehicle. By his own stipulation plaintiff violated Rule 13. This is by far the most egregious rule violation. The conduct of lying to a superior officer is, obviously, directly related to one's service as a police officer since it may reflect an undesirable attitude and cast a shadow over the person's subsequent credibility. However, the subject matter of this false report, *i.e.*, that he had not driven his vehicle, is only peripherally related to plaintiff's official police duties.

The fourth finding is based on a charge that plaintiff gave a false report falsely stating he was out to lunch when he had not obtained permission to go to lunch. The finding here is somewhat puzzling. Certainly an officer under the rules has the right to go out to lunch. The fact that he did not notify his superior does not mean that he is not out to lunch. He was in violation of a certain procedure of the Fillmore station which stated that an officer should notify his superior before going out to lunch, but certainly he did not violate Rule 13 by giving a false report to a superior. Furthermore, plaintiff's uncontroverted testimony was that he notified his partner, Officer Romano, that he was going to lunch and then to traffic court. Officer Romano did not testify, although he was present in the court room. Lt. Brown testified that before leaving the station for lunch an officer "* * * should inform the Watch Commander * * * . Actually he could advise the supervisor or anyone." Although it would have been preferable to notify his supervisor, under these facts and considering the somewhat nebulous parameters of the station's procedure, we cannot see that plaintiff gave a false report to Inspector Walsh.

The last finding was that he left his duty assignment without being properly relieved. The station's procedure in logging out before going to traffic court is much more clearly defined than the procedure for going to lunch. It is clear that plaintiff should have signed out and that he did not do so. There is nothing in the record to determine whether this oversight was intentional. He had informed his superior in good time that he was required to appear in court and he logged in at court at 12:40 and logged out at 4:20.

■■ In considering whether the evidence supports the finding of the Board on review it is not the duty of the court to weigh the evidence, but rather it is its duty to ascertain if the findings and decision of the administrative agency are against the manifest weight of the evidence. (*Schnulle v. Board of Fire & Police Commissioners* (1974), 16 Ill. App. 3d

812, 818, 306 N.E.2d 906.) The findings of an administrative agency will be set aside only where they are against the manifest weight of the evidence. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126; *Sudduth v. Board of Fire & Police Commissioners* (1964), 48 Ill. App. 2d 194, 198 N.E.2d 705; *Taylor v. Civil Service Com.* (1961), 33 Ill. App. 2d 48, 170 N.E.2d 200.) In order to reach the conclusion that a particular finding is against the manifest weight of the evidence, this court must be satisfied that an opposite conclusion is clearly evident. *Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624; *Kelley v. Civil Service Com.* (1961), 31 Ill. App. 2d 115, 117, 175 N.E.2d 630, 631; *Arboit v. Gateway Transportation Co.* (1957), 15 Ill. App. 2d 500, 507, 146 N.E.2d 582, 586.

In our opinion the evidence supports the findings that plaintiff violated general rule 2 in four instances, specifically, the Board's findings 1, 2, 3, and 5. We find that this conduct impeded the Department's efforts to achieve its goals and brought discredit upon the Department.

■■ The next question is whether the findings of the Board present sufficient cause to warrant plaintiff's discharge. The courts have construed "cause" to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. (*Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 37, 234 N.E.2d 339, 341; *Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573; *Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 563, 323 N.E.2d 624; *Fornuto v. Police Board* (1976), 38 Ill. App. 3d 950, 349 N.E.2d 521.) A board's decision as to the existence of cause will not be reversed as long as it is related to the requirements of the service and not so trivial as to be unreasonable. (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 1075, 340 N.E.2d 560; *Davis v. Board of Fire & Police Commissioners* (1962), 37 Ill. App. 2d 158, 185 N.E.2d 281.) In a proceeding to remove a police officer, it is the function of the court to decide whether the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary; whether the commission acted on evidence that fairly tended to sustain the charges; and whether its decision is related to the requirements of the service. *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 488, 202 N.E.2d 522.

■■ Although this court can in no way condone plaintiff's actions, we fail to see that this conduct, as unsatisfactory as it may be, is sufficient cause to require plaintiff's discharge from the Department, especially in light of testimony by a number of reputation witnesses as to his satisfactory service record of almost six years with the Department. We do not see that these findings, without more, are sufficiently substantial or

so significantly related to the performance of Kreiser's police duties as to demand the maximum penalty of discharge and removal from the Department. Therefore, we reverse the findings of the Board and the affirmance of the circuit court.

Reversed.

STAMOS, P. J., and HAYES, J., concur.