PEARL K. FOX, Plaintiff-Appellee, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 77-183, 77-512 cons.

Opinion filed October 30, 1978.

William J. Scott, Attorney General, of Chicago (Mary F. Stafford, Assistant Attorney General, of counsel), for appellants.

William J. Harte, of Chicago, for appellee.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff-Appellee, Pearl Fox, was discharged from her position as a Security and Fraud Investigator I with the Illinois Department of Revenue (hereafter Department) after a hearing before the Illinois Civil Service Commission (hereafter Commission) (Ill. Rev. Stat. 1977, ch. 127, par. 63b111). She filed a complaint for administrative review against both the Department and Commission in the circuit court of Cook County (Ill. Rev. Stat. 1977, ch. 110, pars. 264-279). The circuit court reversed the Commission's order and the Department appeals seeking reinstatement of the Commission's ruling. We affirm the decision of the circuit court that Fox's misconduct was not so substantial as to constitute cause for discharge.

On August 20, 1975, the Department certified and issued charges for the discharge of Pearl Fox summarized below:

(1) That on May 12, 1975, while in the course of performing her duties for the Department, she conducted herself in a manner unbecoming an employee of the State of Illinois by using extremely profane language in public thereby verbally abusing and offending citizens and taxpayers;

(2) Subsequent to her suspension pending discharge, she committed an insubordinate act by wilfully refusing to return taxpayer files and records to the Department.

The hearing officer found the evidence did not support this latter charge. The facts surrounding the charge of conduct unbecoming a State employee and the May 12, 1975, incident follow.

Pearl Fox was hired by the Department on February 3, 1969, as a Security and Fraud Investigator I. On June 18, 1970, she completed her probationary stage of employment and attained certified employee status. As an Investigator I plaintiff was primarily responsible for investigating alleged violations of Illinois tax statutes and for occasionally conducting employee and security investigations. Tax violation investigations necessitate frequent contact with taxpayers often of an accusatory nature.

In April of 1975, Fox was assigned to investigate the Oak Vending Company. She was to determine whether they were carrying out retail operations while their certificate of registration was revoked. Officers of Oak Vending included John Farrell, president, and Donald Folstrom, vice president. During the month of April, Fox visited and telephoned Oak Vending on several occasions attempting to contact Farrell. Despite having attained several addresses where Farrell purportedly resided, Fox was unable to locate him. She also did not contact Folstrom until May 12, 1975.

On May 12, 1975, Fox returned to the premises of Oak Vending in connection with her investigation and presented her State credentials to

the secretary, Mrs. Mary McCue. She then asked McCue the whereabouts of Farrell. McCue did not provide the requested information but told Fox that Folstrom was in his office.

From this point the testimony is conflicting. Fox testified that McCue appeared nervous while informing Folstrom that she sought Farrell's location. According to Fox, Folstrom became angry with McCue because he didn't want to come into contact with Fox. Folstrom commented to a tall man, "Look what we got here; what's that kind [black] doing out here?" Fox testified that after making her wait for 15 or 20 minutes, Folstrom remarked, "We don't have any of that kind; what's that black bitch doing here?" At that point, Fox telephoned her supervisor, Michael Berry, told him she was involved in a touchy situation, and asked him to talk to Folstrom. Folstrom picked up an extension phone and asked Berry to identify Fox claiming she hadn't shown credentials. He also objected to her use of his phone without permission.

Fox further testified that Folstrom said to Berry, "What the fuck is she doing out here; she has no business here." Fox replied in kind, "What the fuck do you think I'm doing here. I'm out here on business." According to Fox, supervisor Berry was laughing along with Folstrom. He agreed that Fox had no business there and told her to come back to the office. Near the end of the incident one of the men from the office said he was going to call the police. Fox replied that she would welcome police intervention. At this point, Fox claimed that the "tall man" took her arm and attempted to lead her out. She responded, "take your hands off the dry goods" and left the office.

Other witnesses, principally Folstrom and Berry, report a different version of the incident. Mrs. McCue gave Fox permission to use the phone. Folstrom reported that after finishing a phone conversation, he asked his secretary what Fox wanted. Folstrom testified that Fox interjected, "You know damn well what I want." When Folstrom protested no knowledge of her purpose, she called him a "god damn liar." Folstrom then picked up an extension phone and asked Berry to identify Fox and explain what she wanted and complained about her language. The argument became more heated when Folstrom again denied knowledge of the Oak Vending investigation. He testified that twice again during the argument Fox called him a "god damn liar" and he then replied in hand, "No, you're a god damn liar." Supervisor Berry, having heard the incident over the phone, corroborated Folstrom's testimony.

Milton Peterson and Fred Fabry, occupants of adjacent offices, testified that they were disturbed by the loud argument. Both men left their offices to attempt to quell the disturbance. Peterson warned that he would call the police if it didn't quiet down. According to Peterson, Fox said, "Go ahead and call the fucking police." At this point the shouting

match quieted and Peterson and Fabry returned to their offices. At the urging of Berry, Fox returned to the office, but according to Folstrom, as a parting remark she called him a "four-eyed fat crook."

Folstrom admitted directing some profanity at Fox but denied making racial slurs although racial overtones were insinuated. Other Department witnesses confirmed that no racial slurs were explicitly stated. Folstrom repeatedly denied knowledge of the Oak Vending investigation, yet on cross-examination several prior inconsistent statements were introduced to impeach his credibility on this point.

A substantial and significant portion of the record does not directly concern the May 12 incident. The hearing examiner found testimony regarding Fox's employment history and relations with the Department pertinent. Fox had one prior 60-day suspension for profanity during her six-year tenure with the Department. Her offense was uttering profanity to State employees in a public building. This suspension was upheld on administrative review. (Fox v. Department of Revenue (Cir. Ct. Cook Cty. 1975), No. 74L 15696.) There is no evidence in the record that the Department had promulgated any internal disciplinary rules concerning employee profanity nor that Fox had been expressly warned that further episodes of profanity would result in her discharge. Nonetheless, this suspension made Fox aware that this conduct was not approved by the Department.

Fox presented evidence that the Department did not discipline other employees who used profanity. Numerous witnesses testified that profanity was rampant among and between Department employees around the office. Fox also presented evidence that other investigators had been accused by taxpayers of using profanity. Yet, Fox was the only Department employee ever investigated or disciplined for profanity.

The record also contains evidence of several employment disputes between Fox and the Department. In late 1969 or early 1970, Fox filed a complaint with the Illinois Fair Employment Practices Commission (hereafter F.E.P.C.) alleging various discriminatory practices by the Department. On March 20, 1975, the F.E.P.C. issued a cease and desist order directed against Department practices of discriminating against Fox and other minority investigative personnel with regard to duty assignments, employee relations, and other terms and conditions of employment. Additionally, in May 1974, Fox filed a complaint with the Equal Employment Opportunity Commission alleging wage and promotion mistreatment due to her race and sex and that her 60-day suspension was a reprisal for her legal and union activism. After investigation by Federal authorities, the United States Department of Justice issued a letter granting the right to initiate a civil suit. The Department received notice of this letter on May 30, 1974, and Fox

subsequently filed suit in Federal district court. In 1974, Fox also filed a second race discrimination and unfair labor practice complaint with the F.E.P.C. The Department was issued a notice of finding of substantial evidence on July 14, 1975. Within a few weeks the Department initiated discharge proceedings against Fox for the May 12, 1975 incident.

■■ Presently, these Federal and State unfair labor practice and discrimination actions are still pending. It is not the function of this court to characterize or predict the merits of this pending litigation nor to hold the earlier findings of the F.E.P.C. in any way binding in this cause. However, these matters are part of the Commission's record we are required to review and are relevant to Fox's claim of selective enforcement. We must consider the totality of circumstances surrounding Fox's employment with the Department rather than narrowly focus upon the incident of May 12, 1975. *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441-42, 352 N.E.2d 389, 394, *aff'd and remanded* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.

At issue before the court are (1) whether the manifest weight of the evidence supports the findings of the Commission, and (2) if so, do these findings constitute sufficient cause to warrant discharge?

On administrative review the court's function is to ascertain whether the findings of the agency are supported by substantial evidence in the record and are not contrary to the manifest weight of the evidence. (*Davis v. Retirement Board* (1975), 30 Ill. App. 3d 318, 332 N.E.2d 446.) Findings of an administrative agency are prima facie true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) In order to conclude that a particular finding is against the manifest weight of the evidence, this court must be satisfied that an opposite conclusion is clearly evident. (*Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624; *Carlisi v. Illinois Liquor Control Com.* (1969), 116 Ill. App. 2d 350, 253 N.E.2d 560.) Furthermore, a reviewing court may not judge the credibility of the witnesses or substitute its judgment for that of the Commission. *Res v. Civil Service Com.* (1977), 49 Ill. App. 3d 852, 365 N.E.2d 209.

■■ ■ The Department contends the circuit court did not apply the correct standard of review. We find the Department misconstrues the circuit court's analysis. The circuit court correctly recognized that the manifest weight of the evidence standard was applicable upon review of the Commission's findings but found the issue of cause dispositive as did the court in *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560.

> "The pivotal question presented is not whether the board's decision was against the manifest weight of the evidence but whether under that evidence there was sufficient cause to remove Caliendo from the police department." (34 Ill. App. 3d 1072, 1075, 340 N.E.2d 560, 562.)

Accordingly, we find no error in the standard of review applied by the circuit court. We concur with the hearing examiner and find that the manifest weight of the evidence proved Fox used profanity. The hearing officer does not explicitly state which, if either, version of the May 12 incident is credible. However, in her Analysis of Findings, she states:

> "Mr. Folstrom, citizen and taxpayer, testified that the Respondent called him a 'god damn liar' on three occasions. He also stated that the Respondent said 'fucking police'. Several other witnesses, including the Respondent's supervisor, also testified that the Respondent used profanity on May 12, 1975 at the office of Oak Insurance Company. The Respondent denied calling Mr. Folstrom a 'god damn liar' but admitted saying, 'What the fuck do you think I'm doing out here?' * * *"

Since the hearing officer decided the charge had been proved, it is evident that she concluded Fox had uttered some or all of the alleged profanity. It is not apparent that the hearing officer determined whether or not Fox had been provoked or whether provocation had any impact upon her findings. Since conflicting evidence is not grounds for reversing the Commission (*Carlisi v. Illinois Liquor Control Com.* (1969), 116 Ill. App. 2d 350, 253 N.E.2d 560), and a contrary determination of the facts is not clearly apparent, we hold that the Commission's findings were supported by substantial, competent evidence and were not against the manifest weight of the evidence.

■■ ■ Holding that the Commission's finding the facts underlying the charge had been proved does not end our inquiry upon review. Section 11 of the Personnel Code prohibits discharge of certified employees except for "cause." (Ill. Rev. Stat. 1977, ch. 127, par. 63b111.) Since cause is not defined in the statute, whether a charge is sufficient cause for discharge is generally for the Commission to determine. (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560; *Joyce v. Board of Education* (1945), 325 Ill. App. 543, 60 N.E.2d 431, *cert. denied* (1946), 327 U.S. 786, 90 L. Ed. 1013, 66 S.Ct. 702). However, unlike findings of fact, agency determinations of cause are not prima facie true and correct and are subject to judicial review. (*Caliendo v. Goodrich.*) Manifest weight of the evidence is not the applicable standard of review and the Commission's determination may be overturned if trivial, arbitrary or unreasonable. *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522; *Parkhill v. Civil Service Com.* (1978), 58 Ill. App. 3d 291; 374 N.E.2d 254; *Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 367 N.E.2d 778.

■■ Illinois courts have provided guidance to the Commission by defining cause as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and

efficiency of the service and which the law and sound public policy recognize as good cause for his no longer holding the position. *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *appeal dismissed* (1978), 435 U.S. 911, 55 L. Ed. 2d 502, 98 S. Ct. 1463; *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd and remanded* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.

■■ We find that the circuit court applied the correct standard for review of the Commission's finding of cause. The court found that the manner in which an employee addresses herself to a taxpayer is related to service requirements but that Fox's misconduct was not of such a substantial nature as to warrant discharge.

Parenthetically, at oral argument counsel for the Department contended that upon administrative review courts may not consider whether a charge is too trivial to constitute just cause. The Department sought to distinguish *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522, contending it was limited to police officers. This assertion is without merit since courts have considered the severity of misconduct in reviewing cause where the employees involved are not police officers. See *Parkhill v. Civil Service Com.* (1978), 58 Ill. App. 3d 291, 374 N.E.2d 254 (physician); *Res v. Civil Service Com.* (1977), 49 Ill. App. 3d 852, 365 N.E.2d 209 (prison guard).

■■ In affirming the circuit court, we initially focus on the factor of government employment as an entitlement and important right of nonprobationary employees. Until recent years public employment was treated as a gratuity which the government could give or take away at will. (*Bailey v. Richardson* (D.C. Cir. 1950), 182 F.2d 46, *aff'd by equally divided court* (1951), 341 U.S. 918, 95 L. Ed. 1352, 71 S. Ct. 669.) This decade has brought disapproval of *Bailey* and the recognition that government employment is an important entitlement protected by due process of law. *Bishop v. Wood* (1976), 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074; *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.

Illinois similarly recognizes the importance of public office to the individual and carefully protects this entitlement via the Personnel Code. (Ill. Rev. Stat. 1977, ch. 127, pars. 63b108b-63b108b.17.) This statute sets forth procedural protections regarding, among other things, hiring, promotions, layoffs and discharge of public employees. Once a State employee has completed his probationary term, he may not be discharged except for cause and subject to due process hearing protections. Ill. Rev. Stat. 1977, ch. 127, par. 63b111.

Appellate review of Commission hearings under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, pars. 264 through 279) constitutes an additional procedural protection and demonstrates the importance this

State attaches to public employment. Prior to the passage of the Administrative Review Act, the only review of Commission rulings was by certiorari and was limited to the issue of jurisdiction. (*People ex rel. Maloney v. Lindblom* (1899), 182 Ill. 241, 55 N.E. 358.) The scope of judicial review has expanded over time so that today court review is itself an important procedural protection for the substantial entitlement of State employment. See *Nolting v. Civil Service Com.* (1955), 7 Ill. App. 2d 147, 155-58, 129 N.E.2d 236, 240-42, for a summary of the expansion of the scope of judicial review of Commission hearings.

In short, State and Federal advancements in procedural protections afforded government employees prior to discharge and Illinois' expansion of the scope of review clearly indicate that the entitlement to public office, once earned, will not be lightly cast aside.

■■ This does not mean that this court may become a "super-commissioner" and second guess decisions of the Commission according to its whim and pleasure. This court must properly balance employees' interests in avoiding dismissal not warranted by the facts and the State's interest in maintaining efficiency through the prompt removal of employees who presently contribute to inefficiency because of past conduct. (*Kennedy v. Sanchez* (N.D. Ill. 1972), 349 F. Supp. 863, *rev'd on other grounds sub nom. Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633.)

> "The legislature did not intend that the act [Administrative Review Act] should be so lightly followed nor was it intended nor does the law allow a stamp of approval to be placed on the findings of an administrative agency merely because such agency heard the witnesses and made the requisite findings." (*Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 231, 75 N.E.2d 303, 309.)

To implement lesser scrutiny upon review would be to return to pre-Administrative Review Act standards.

■■ Considering the importance of public employment, the proper and necessary role of this court upon review, and the totality of circumstances in this case, the triviality of Fox's misconduct does not warrant discharge. By our holding we do not mean to say that profanity can never be just cause for discharge nor that a single instance of profanity may not be cause. Nor do we condone the profane and offensive language directed at taxpayers here. Public employees must strive to maintain professionalism at all times even if provoked or during heated incidents. Whether suspension or demotion would be suitable alternative punishments is an issue beyond the province of this court. (*Nolting v. Civil Service Com.* (1955), 7 Ill. App. 2d 147, 129 N.E.2d 236.) However, we do not wish our opinion construed as advocating Fox go unpunished for her unjustified conduct. We expressly limit our holding to the narrow circumstances of this case where there is evidence of:

(1) possible provocation by Folstrom and a heated, adversary situation capable of precipitating a blowup;

(2) Fox's good work record over a period of six years;

(3) overzealous behavior by Fox rather than neglect of duty or intentional or malicious misconduct; and

(4) selective enforcement against use of profanity by the Department.

The testimony concerning provocation is conflicting. Fox asserted that racial epithets were directed at her by Folstrom. He denied making any racial remarks, but stated that racial slurs were insinuated. Other witnesses, including supervisor Berry, testified that they heard no racial slurs. Additionally, the volatile situation presented was an incident of Fox's duty to investigate tax violations. These investigations, which were unavoidably accusatory in nature, necessitated citizen contact. We agree with the circuit court that:

> "[I]n the heat of excitement and activity which investigators have from day to day their job should [not] be in jeopardy if the passion rises to such a level that improper language is utilized."

Neither provocation nor the tension created by investigatory duties by themselves excuse Fox's use of profanity. Yet, these are circumstances that should be considered in reviewing cause and the substantiality of her misconduct.

Fox's employment history with the Department also has bearing upon the issue of cause. (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd and remanded* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) The Commission record provides evidence that Fox had been employed by the Department for six years, that her last work report was good, and that her work record is generally favorable.

The Department contends that Fox's prior 60-day suspension for profanity evidences a continuing course of impropriety detrimental to the efficiency of the Department. The force of this contention is seriously curtailed by evidence Fox was suspended in retaliation for her charges of discrimination and unfair labor practices and by the Department policy of selective enforcement. Overall, in light of our discussion of the entitlement to public employment, Fox's six year favorable work record militates against her discharge.

We note that at the Commission hearing the Department had an opportunity to submit any evidence that Fox was not a capable and efficient employee. Aside from the two instances of profanity, there is no evidence that Fox did not faithfully serve the Department for six years. Furthermore, on February 3, 1977, the circuit court denied the Department's motion for a stay thereby allowing Fox to return to work. The Department has not contended that they have experienced any difficulties with Fox since her return.

Another factor in mitigation is that Fox's misbehavior could not be attributed to neglect or intentional dereliction of duty. The evidence indicates her conduct was not malicious, but constituted an overreaction to a situation stemming from her overzealous attitude toward investigations and prosecution. That she may not be able to correctly channel these traits in a professional fashion is an employment shortcoming to be corrected, but not a deficit so detrimental to the efficiency and proper functioning of the Department as to warrant discharge.

■■ The final circumstance in mitigation bearing upon the issue of cause is evidence of selective enforcement by the Department. If it is not clear that the Department views profanity as warranting discipline, how can this court arrive at that conclusion? Selective enforcement alone cannot excuse Fox's behavior. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229). There is sufficient evidence regarding arbitrary discipline of profanity to influence our evaluation of just cause. Numerous witnesses testified that profanity was commonplace among Department investigators. Fox also presented evidence indicating other investigators had been accused by taxpayers of using profanity. No investigations or disciplinary actions were taken except against Fox.

Despite finding the charge was proved, the hearing examiner made the following reservations:

> "Whether or not the charge is sufficient cause for discharge is for the Commission to determine. If the Respondent is being held to a higher standard of conduct than other employees who have committed similar acts, then the discharge should not be sustained. The Respondent did present evidence that at least one similar act by an investigator had gone unpunished."

Both the hearing examiner and the circuit court felt there was evidence that the Department applied separate standards concerning profanity: one for Fox, and one for other employees be they in the office or on the street.

The Department contends that profane and abusive language directed at citizens is cause for discharge. They cite no appellate court decision to support this proposition, but rely on several Civil Service Commission decisions. (Department of Corrections v. Ferguson (1972), No. 78-81; Department of Mental Health v. O'Kiersey (1972), No. 7-72; Department of Public Health v. Estelle (1971), No. 89-70.) These cases are distinguishable, however, since they involve profanity and threats directed at supervisors or higher-level personnel. Such misconduct unmistakeably subsumes insubordination and detriment to interagency discipline that is not readily apparent when a citizen is involved.

*Norris v. Commission on Human Relations* (1975), 26 Ill. App. 3d 528, 325 N.E.2d 818, presented a situation where profane and abusive

language uttered to a superior was upheld as just cause for discharge but only when aggregated with other charges. Those charges included:

(1) failure to adequately perform the duties in the job description;

(2) negligence in administering the Anti-Solicitation Law and in assisting the Attorney General;

(3) failure to comply with office rules and practices, including scheduling trips without approval of his supervisor, not accounting for work time on a regular basis, and taking hospital leave without notice to his supervisor.

Plaintiff had confronted the Executive Director, directed a series of abusive profanities at her, stormed around her office pounding his fist, and finally threatened to destroy her career. By comparison, Fox's misconduct was not nearly so severe since her language was not threatening, did not amount to insubordination against a superior and her shortcomings did not equal a continuing course of poor employment.

In view of our disposition that Fox's misconduct is too trivial to constitute cause, we need not reach the remaining issues raised by plaintiff-appellee Fox. Fox claims that her constitutional rights were infringed because she was not afforded a presuspension hearing. Even if this issue were not mooted by our affirmance of the circuit court, appellee is precluded from attacking the circuit court's judgment for failure to file a cross-appeal. Accordingly, this court lacks jurisdiction to consider Fox's exception to the circuit court's ruling. *People ex rel. Southfield Apartment Co. v. Jarecki* (1951), 408 Ill. 266, 96 N.E.2d 569; *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 319 N.E.2d 336.

Finally, Fox argues that as a certified civil service employee she could not be suspended for more than 30 days absent a hearing. (Ill. Rev. Stat. 1977, ch. 127, par. 63b111.) She alleges that her suspension pending discharge lasted more than 30 days and seeks dismissal of the charges, or at a minimum, back pay from her 31st day of suspension. Our disposition moots this issue as well. Additionally, we note that since this argument was never raised before the Commission and is not part of the record, it may not be raised in court on review or upon appeal. *Gordon v. Department of Registration and Education* (1970), 130 Ill. App. 2d 435, 246 N.E.2d 792.

We find that the profanity uttered by Fox was not such substantial misconduct as to warrant her discharge. Accordingly, the decision of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.