TIMMIE BATLEY, Plaintiff-Appellant, *v.* KENDALL COUNTY SHERIFF'S DEPARTMENT MERIT COMMISSION, Defendant-Appellee.

Second District    No. 81-42

Opinion filed August 24, 1981.

Herbert Hill, of Aurora, for appellant.

James R. Schirott, of Samuelson, Knickerbocker & Schirott, of Des Plaines, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

This is an appeal by plaintiff, Timmie Batley, from an order of the circuit court of Kendall County affirming the decision of the Kendall County Sheriff's Department Merit Commission, which discharged him from the department. Plaintiff contends on appeal: (1) that he was denied due process when the circuit court affirmed his discharge but based it upon acts neither charged in the complaint before the merit commission nor specifically found by the merit commission, (2) that the circuit court committed reversible error when it reversed certain findings of the merit commission but still affirmed his dismissal, and (3) that his discharge was arbitrary and unreasonable.

In a letter dated January 25, 1980, from the sheriff of Kendall County, Victor Frantz, Batley was charged with the following:

"1. Permitting one Toni Heubel to possess your firearm at the Aurora Police Station in a concealed place, to-wit: her purse, in violation of Chapter 38, Section 24—1, Illinois Revised Statutes.

2. Refusing to comply with my order to you of 1/21/80 with regard to submission to a polygraph examination."

The letter further alleged that this conduct was in violation of specific provisions of the Kendall County Sheriff's Department Standards of Conduct and the Kendall County Merit Commission Rules and Regulations. At oral argument, counsel for Batley stated that a subsequent letter also charged Batley with making a derogatory remark, "My friends come first, fuck the Department." Although this letter is not in the record, both parties agree that this charge was also before the merit commission.

Antonia Cotts was the first witness called by the sheriff at the hearing. Cotts testified that on the morning of December 21, 1979, she was in the LaRoca restaurant in Aurora, Illinois. She stated that, at that time, she witnessed a patron enter the restaurant with a gun tucked in his belt. Thereupon, she promptly left the restaurant, and, when she reached home, she notified the Aurora police of what she had seen.

Salvador Polanco, the owner of the LaRoca restaurant, corroborated the fact that Cotts had been in the restaurant at approximately 2 a.m. on December 21, 1979. Polanco stated that Officer Timmie Batley was also present in the restaurant on that night and was in the company of two women and another man. The witness further testified that Aurora police officers had entered his restaurant that night and that they had discovered guns on Batley and his companions.

Edward Beale, an Aurora police officer who had responded to the call at the LaRoca restaurant, was the next witness called by the sheriff. Beale stated that after gaining entry to the restaurant, he asked Mr. Polanco if he had noticed if any of the patrons were wearing guns. Polanco responded in the negative but directed the officer toward Batley and his companions since they were the only customers remaining in the restaurant. Beale approached the group and subsequently discovered guns on the persons of Batley, Timothy Riley, and Sharon Riley. Beale stated that he then arrested the Rileys and returned Batley's gun to him after Batley identified himself as a deputy sheriff.

Thomas Ratz, another Aurora police officer who had responded to the call at the LaRoca restaurant, then testified. Ratz stated that, after the arrest of the Rileys, he saw Officer Batley and his female companion, Toni Heubel, in the waiting room of the Aurora police station. Ratz testified that while at the station, he heard Officer Beale make a comment to Batley that he "should be more careful who his companions were." Beale stated that Batley then responded that he cared more about his friends than his job. Beale further testified that when Batley and Heubel were leaving the station, Batley asked her for his gun, and Heubel reached into her purse and handed it to him.

Officer Robert Reichardt of the Aurora Police Department also testified that he heard Batley ask Heubel for his gun but stated that, because of his position in the station, he could not see the actual transfer of the weapon. Reichardt also testified to the dialogue that transpired between Batley and Officer Beale. Reichardt testified that, in response to a comment by Beale, Batley stated "that his friends come first, 'fuck the Department'."

Sheriff Victor Frantz was then called and laid the foundation for the admission of the Kendall County Sheriff's Department Standards of Conduct and the merit commission's rules and regulations. He testified that Batley had been a deputy sheriff for about three years. On cross-examination, Frantz indicated that Batley had received the Policeman of the Year Award from the Illinois Valley Chiefs of Police Association. Frantz stated that the association was fully apprised of the charges pending against Batley at the time the award was given.

Toni Heubel was the first witness called by Timmie Batley. Heubel stated that while she and Batley were at the Aurora police station, he at no time offered her his gun or allowed her to touch it. Heubel admitted that Batley's gun had ended up in her purse but stated that she did not know how it got there. She also stated that just before they left the station, Batley reached into her purse and removed the weapon. Heubel indicated that she had no knowledge that the gun was in her purse until Batley

removed it. Further, the witness denied that Batley had made the alleged comment to Officer Beale. Heubel was at the time working as a jailer in Kendall County as a CETA employee.

Timmie Batley was the last witness called at the hearing. He stated that while at the Aurora police station, he slipped his gun inside Heubel's purse while she was "half asleep." Batley indicated that Heubel was unaware that he had done so. Finally, Batley denied making the remark that was previously testified to by the two Aurora police officers.

At the close of all the evidence, the Merit Commission specifically found as follows:

"B. That Timmie Batley, on December 21, 1979, permitted one Toni Heubel to possess his firearm in a concealed manner in violation of Chapter 38, Section 24—1, Illinois Revised Statutes, and thereby did violate Paragraph 16. of the Kendall County Sheriff's Department Standards of Conduct, and Paragraphs 1. and 3. of the Kendall County Merit Commission Rules, Regulations and Procedures;

C. That on December 21, 1979, at the Aurora Police Department, Aurora, Illinois, Timmie Batley did state to Robert Reichardt, an officer on duty: "My friends come first, fuck the Department," and thereby did violate Paragraph 8 of the Kendall County Merit Commission Rules, Regulations and Procedures; and,

D. That on the 21st and 22nd days of January, 1980, Timmie Batley refused to comply with an order of the Sheriff to undergo a polygraph examination in furtherance of the investigation of Timmie Batley's alleged conduct on December 21, 1979, and that Timmie Batley's refusal was justified * * *."

The merit commission then ordered Batley discharged from the Kendall County Sheriff's Department.

Thereupon, plaintiff filed a petition for issuance of a writ of *certiorari* with the circuit court of Kendall County seeking review of the merit commission's decision. The court granted the merit commission's motion for summary judgment and found that although plaintiff had made the disparaging remark about the sheriff's department, the remark was made in anger and was too trivial in nature to have brought discredit to the department. The court further found that while the record was absent any evidence which would justify the merit commission's finding that Batley's act of placing his weapon in Heubel's purse violated any State law or ordinance, such conduct did constitute a violation of the merit commission's rule against the negligent handling of weapons. The court granted the motion for summary judgment on this basis.

Although the court below erroneously treated the case as arising

under the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*)[1], this point is not significant. Our supreme court has held that there no longer exists a substantial difference in the standards of review between common law *certiorari* and statutory administrative review. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 541-42, 367 N.E.2d 1286; see also *Penrod v. Department of Corrections* (1979), 72 Ill. App. 3d 649, 651, 391 N.E.2d 59.) The supreme court has also recently articulated the scope of review of an administrative agency's decision regarding discharge of an employee. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) The review is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. Second, the court must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does nor does not exist. An agency's decision as to cause for discharge will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service.

■■■ We agree with plaintiff's first contention that the trial court committed error in basing its affirmance of the discharge upon plaintiff's violation of the merit commission's rule prohibiting the negligent handling of weapons. Plaintiff was not charged with a violation of this provision in the complaint, nor did the merit commission's order find that he had violated it. Moreover, the merit commission's own rules provide that in disciplinary proceedings the sheriff must file a complaint setting forth a plain and concise statement of facts upon which the complaint is based and the specific section or sections of the rules which the accused member is charged with violating. It is well established that although charges filed before an administrative agency need not be drawn with the same refinements and subtleties as pleadings in court of record, the charges must be specific enough to apprise the respondent of the charges brought against him so as to enable him to intelligently prepare his defense. (*Wierenga v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 270, 274, 352 N.E.2d 322.) Since plaintiff was not charged with this violation, he obviously could not have been able to intelligently prepare a defense against it. Accordingly, it was error for the trial court to base its decision on a provision that was not before the merit commission. (See *Kupkowski v. Board of Fire & Police Commissioners* (1979), 71 Ill. App. 3d 316, 321, 389 N.E.2d 219.) A court reviewing a decision of an administrative agency has no authority to try the new case anew upon the record

[1] The legislature has recently made the provisions of the Administrative Review Act applicable to govern all proceedings for judicial review of an order of a merit commission dismissing a deputy sheriff. (Pub. Act. 81—1475, §14, effective Jan. 1, 1981.) The statute, however, was not in force at the time plaintiff sought review of the merit commission's decision in the present case.

or to substitute its judgment for that of the agency or in any manner to modify or revise the agency's order. *Adamek v. Civil Service Com.* (1958), 17 Ill. App. 2d 11, 20, 149 N.E.2d 466.

■■ Plaintiff was charged with violations of paragraphs 1 and 3 of the merit commission rules and paragraph 16 of the sheriff's department standards of conduct for his act of permitting Toni Heubel to possess his gun. These provisions basically provide that a member of the sheriff's department must obey the laws of the State. The merit commission found that Batley violated section 24—1 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 24—1) and hence violated the merit commission rules and the Sheriff's Department Standards of Conduct. The only provision of section 24—1 which may apply to plaintiff's conduct states that a person commits the offense of the unlawful use of weapons when he "[c]arries concealed in any vehicle or concealed on or about his person * * * any pistol, revolver, stun gun or taser or other firearm; * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(4).) However, this provision is specifically made inapplicable to peace officers. (Ill. Rev. Stat. 1979, ch. 38, par. 24—2(a)(1).) Hence, it is clear that Batley himself could not have directly violated this provision, and the record further discloses that as a deputy sheriff he was on 24 hour call which was the reason for deputies being required to carry their weapon.

Similarly, Batley did not commit any criminal act upon the basis of being legally accountable for the conduct of Toni Heubel. (See Ill. Rev. Stat. 1979, ch. 38, par. 5—2.) A required element of the offense of the unlawful use of weapons is knowledge. (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a).) Insufficient evidence was presented to the merit commission which would tend to show that Heubel had knowledge that Batley's weapon was in her purse. While Officers Ratz and Reichardt testified that they heard Batley ask Heubel for his gun, that statement standing by itself is not inconsistent with Batley's testimony that Heubel did not know the gun was there until he asked for it. The only direct evidence presented on this issue was the testimony of both Heubel and Batley. Heubel denied having knowledge that the gun was in her purse, and Batley corroborated this fact when he testified that he slipped the gun into Heubel's purse when she was "half asleep" and without her knowledge. Based on this evidence, since Heubel was not shown to have committed the offense of unlawful use of weapons, Batley could not as a matter of law have been accountable for any criminal conduct. Where the record does not disclose evidentiary support for the agency's determination, a reviewing court must reverse the finding. (*Baskerfield v. Police Board* (1974), 56 Ill. 2d 351, 359, 307 N.E.2d 371.) Thus, this finding of the merit commission was erroneous and clearly against the manifest weight of the evidence.

■■ The merit commission next made the finding that Batley had made

the comment: "My friends come first, fuck the Department." Although this was denied by plaintiff, this statement was testified to by two Aurora police officers. Findings of an administrative agency on questions of fact are to be held *prima facie* true and correct (*Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 70, 391 N.E.2d 190), and if the issue is merely one of conflicting testimony and credibility of a witness, the Board's determination should be sustained. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 557, 370 N.E.2d 1198.) Accordingly, we cannot conclude that this finding of the merit commission was against the manifest weight of the evidence.

■■ The court below concluded that Batley's utterance was insufficient foundation for a finding that it brought discredit upon the department. We believe that this was an erroneous view. The merit commission specifically held that this remark tended to reflect discredit upon the department in violation of article VI, paragraph 8 of the merit commission rules and regulations. Such a finding of fact should not be overturned unless contrary to the manifest weight of the evidence. (*Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201.) An utterance such as this tends to indicate a certain disloyalty to the department, and we cannot say that the merit commission's finding was against the manifest weight of the evidence.

■■ However, we do not conclude that such a remark was sufficient cause for discharge. Although the question of whether there is sufficient cause for discharge is usually for the agency to determine, the agency's decisions will be reversed if it is arbitrary, unreasonable, or unrelated to the requirements of service. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.*) "Cause" has been defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public policy recognize as good cause for his no longer holding the position. (*Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 85, 361 N.E.2d 782, *appeal dismissed* (1978), 435 U.S. 911, 55 L. Ed. 2d 502, 98 S. Ct. 1463.) Although the merit commission rules provide for several disciplinary alternatives besides discharge without specifically setting forth that there must be cause for discharge as is present in the State Personnel Code (Ill. Rev. Stat. 1979, ch. 127, par. 63b 111), we believe that it is implicit in those rules that there be sufficient cause for a discharge.

We do not view the single remark uttered by plaintiff as sufficient cause for discharge. This is in accord with an analogous situation in *Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201, wherein the court held that use of profanity by a public employee was

insufficient cause for discharge when viewed along with the totality of circumstances surrounding her employment. The court emphasized those factors which militated against the discharge such as the employee's previous good work record and the fact that her remarks resulted from overzealous behavior rather than neglect of duty or intentional or malicious misconduct. 66 Ill. App. 3d 381, 391, 383 N.E.2d 1201.

Considering the totality of the circumstances in the present case, we must conclude that, in light of the relatively minor nature of plaintiff's misconduct, our reversal of the merit commission's finding that Batley violated a State law regarding the use of his gun, and a lack of any other evidence adduced at the hearing which could tend to show that plaintiff was a less than capable deputy sheriff, plaintiff's discharge was arbitrary and unreasonable. (See *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511; *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 1076-77, 340 N.E.2d 560.) The only evidence brought out at the hearing which bore on plaintiff's actual capacity to function as a deputy sheriff was favorable to the plaintiff. Plaintiff had been a deputy sheriff for three years and received the Policeman of the Year Award from the Illinois Valley Chiefs of Police Association even though the association was fully aware of the charges that were pending against him at the time of the award.

However, we do not condone plaintiff's conduct nor do we mean to intimate that it should go unpunished. Since the merit commission's order of discharge was based upon two separate findings and one of which we have determined to be inapplicable (the alleged violation of section 24—1 of the Criminal Code), we remand the case to the merit commission for a determination of what alternative sanction short of discharge, if any, should be imposed upon plaintiff for his derogatory remark. See *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 31, 370 N.E.2d 511; *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 361, 307 N.E.2d 271.

The merit commission has argued in its brief that this court also should examine the facts in the record and reverse the merit commission's own finding that Batley's refusal of an order to submit to a polygraph examination was justified. It asserts that Batley's refusal of a direct order of the sheriff to take a polygraph examination is a sufficient ground for discharge and is supported by the evidence even though the merit commission itself decided his refusal was justified. The sheriff is the party that brought this charge, and since the sheriff has not filed a cross-appeal nor is a party to this appeal, the doctrine of estoppel prevents raising this issue now. (See *Kurz v. Quincy Post No. 37, American Legion* (1972), 5 Ill. App. 3d 412, 417, 283 N.E.2d 8.) Also, since the merit commission cannot appeal from its own order, this issue is therefore not properly before us.

For the previously stated reasons, we reverse the circuit court order

and remand to the merit commission with directions to reinstate Batley, to consider his prayer for back pay and for redetermination of any alternative sanction.

Reversed and remanded with directions.

SEIDENFELD, P. J., and HOPF, J., concur.