J. DAVID CRITTENDEN, Appellant, v. THE BOARD OF FIRE AND PO-LICE COMMISSIONERS OF THE VILLAGE OF ARLINGTON HEIGHTS *et al.*, Appellees.

First District (5th Division)    No. 84—0351

Opinion filed December 13, 1985.

Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant.

Jack M. Siegel, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:
Plaintiff, Sergeant J. David Crittenden, appeals from an order of the circuit court of Cook County affirming the decision of the board of fire and police commissioners of the Village of Arlington Heights removing him from the village's police department. In his appeal plaintiff contends that (1) certain evidentiary rulings by the board denied him a fair hearing; (2) the board's decision was against the manifest weight of the evidence; and (3) the penalty of discharge was too severe.

We affirm.

Pertinent to our disposition is the following. Police Officer Patrick Kennedy, after first having been given approval by plaintiff who was acting as watch commander of the Arlington Heights police department, was conducting on September 21, 1981, a surveillance of the house of Frank Caldarazzo, suspected of drug dealing.

Kennedy observed for about 45 minutes two individuals later identified as Norman Esposito and Gina Copitas sitting in a car. He told plaintiff by radio that the two appeared to be snorting cocaine. He also advised the plaintiff that he wished to make a traffic stop if the car moved. Kennedy called for the assistance of Officers William Mols, Joseph Skalski, and Timothy Barret, telling Barret and Mols that he wanted the traffic stop made in order to see if a drug arrest could be made.

When Esposito and Copitas entered another vehicle and drove away Officer Barret followed and stopped them for improper lane usage. An open bottle of liquor was observed at Copitas' feet and co-

caine was found on Esposito. Plaintiff arrived at the scene of the stop, where the two were arrested and taken to the station. There Quaaludes and marijuana were found in Copitas' purse.

Plaintiff testified that Copitas had repeatedly asked him if she could do anything to help herself out of the situation. On the plaintiff's suggestion plaintiff and Kennedy asked Copitas to make a drug purchase from Caldarazzo. After being told that they would request leniency for her, would seek a low bond, and would not arrest Copitas' friend, Rena Koch, who was at the Caldarazzo home unless she sold the drugs, she agreed. Kennedy testified that Esposito was first asked to make the purchase but refused.

Copitas admitted that she ultimately agreed to make the purchase, but only after being told by plaintiff and Kennedy that she was in a lot of trouble, would be in deeper trouble if she refused, and that her girlfriend Rena would be implicated in whatever Caldarazzo was involved in. She confirmed that she was promised help with a lower bond and that Rena would not be involved.

It is undisputed that with the knowledge of the plaintiff, Kennedy gave Copitas $250 in small bills obtained from Esposito for use in the drug purchase. This money was taken from a prisoner property envelope. Kennedy testified that he feared that larger bills would be suspicious and he replaced the money with $250 of his own. It is also undisputed that plaintiff was aware that Kennedy then used Esposito's impounded car to drive Copitas to Caldarazzo's house.

Copitas testified that when she entered the house Caldarazzo and Rena Koch were not there. She hid $30 in the bathroom. Caldarazzo and Koch returned to the house, and Copitas asked Caldarazzo if she could buy some drugs. When he refused she became frightened because the police had told her if she did not return with anything it would be as if she had never gone into the house for them. She grabbed a vial she suspected had cocaine in it from around Koch's neck. Koch grabbed her by the hair and they began wrestling on the stairs. She sustained scratches and a bleeding lip in this struggle. Caldarazzo pushed her against the wall and took the vial from her, but did not hurt her. She then ran out the door and drove to a gas station designated earlier as the place she was to meet the police.

The plaintiff, who served as the acting watch commander throughout this period, joined Copitas at the gas station along with Officers Kennedy, Barret, and Skalski. Copitas testified that she told them that Rena Koch had hit her. She specifically denied saying that Caldarazzo struck her, stating that she only told them he pushed her into the wall in getting the vial but did not hurt her. However, the

plaintiff, as well as Officers Kennedy, Barret, and Skalski all testified that Copitas told them Caldarazzo had beaten her. According to Kennedy her lip and teeth were bleeding, her hair was disheveled, and her fingernails were broken. She told him Caldarazzo punched her and pulled the vial from her.

According to the plaintiff, he and Officers Kennedy, Barret, and Mols went to Caldarazzo's house to arrest him for battery. Kennedy saw Caldarazzo through a window and told him he was under arrest. Caldarazzo told Kennedy that he needed a search warrant to enter the home. Kennedy testified that Caldarazzo locked the front door and then leaned against it as Kennedy attempted to kick it in. However Officer Barret testified that the door was already locked and to his knowledge there was no additional resistance against it from the other side. Kennedy also testified that before he began to force his way in he heard Caldarazzo yell "Flush it!" Barret testified that he heard this before Kennedy began to forcibly enter.

According to Kennedy, when he broke down the door Caldarazzo retreated to the kitchen. When he leaned Caldarazzo over the counter in an attempt to handcuff him, Caldarazzo kept trying to stand up and flailed away at Kennedy, striking him, before being handcuffed. Plaintiff also testified that Caldarazzo was only handcuffed after a struggle. However Officer Barret, who entered with the other two officers, testified that Caldarazzo was standing in the kitchen with his hands up, did not strike anyone, and was handcuffed without any resistance.

Caldarazzo was taken back to the police station, where he was charged with resisting arrest in a complaint signed by Kennedy and with battery in a complaint signed by Copitas. Copitas testified that the plaintiff and Kennedy handed her the complaint and told her to sign it. She also testified that earlier Kennedy, in the plaintiff's presence, told her that Caldarazzo had beaten her and she was going to sign a complaint against him. Further, she did so because she was frightened and because they told her they would help with her bond hearing and would "take care" of the evidence against her. Charges against Caldarazzo, Copitas, and Esposito were subsequently dropped by the State Attorney's office.

■■■ We first consider plaintiff's contention that certain evidentiary rulings at the hearing before the board deprived him of a fair hearing. Plaintiff contends that the board improperly admitted, over his objections, records of an interview conducted with Gina Copitas in the course of the police department's investigation of this incident. Although plaintiff contends that these records constituted inadmissi-

ble hearsay, the record establishes that they were admitted by the board not for the truth of what was asserted in them but only for the fact that the statement was made during the police investigation. Furthermore, plaintiff has failed to specify in what manner he was prejudiced by this evidence, and we find that its admission could not reasonably have affected the board's findings. Accordingly, we will not reverse on this basis. (See *People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) Plaintiff also contends that it was error for the board to bar the testimony of a police officer that the officer had once arrested Gina Copitas for possession of marijuana, resisting arrest, and aggravated battery of a police officer, as well as evidence that Copitas subsequently entered a drug abuse program. What plaintiff fails to note is that this prior arrest record was introduced in the form of a radio transcript in which one of the officers involved in this incident ascertained from the radio dispatcher that Copitas had previously been arrested on those charges. Furthermore, in addition to the ample evidence in the record suggesting that Copitas was involved in drug transactions at the time of this incident, the plaintiff himself testified that at her bond hearing Copitas admitted to the judge that she had been involved in narcotics in the past. Indeed, the only aspect of her drug history not presented to the board, the fact that she once participated in a drug abuse program, cannot reasonably be construed as a factor which would have aided the plaintiff. Accordingly, we find no basis for reversal on this ground.

We next consider plaintiff's contention that the eight charges sustained against him by the board were contrary to the manifest weight of the evidence. In evaluating the board's findings, we are guided by the principle that the findings and conclusions of an administrative agency on questions of fact are deemed to be *prima facie* true and correct. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147.) Those findings may be disturbed only upon a finding that they are contrary to the manifest weight of the evidence. *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371.

The board found that the plaintiff violated a department rule against making false reports by permitting Officer Kennedy to direct Officer Barret to omit from a police report on the arrest of Copitas and Esposito any reference to the surveillance that led up to those arrests. Section 1—340 of the Arlington Heights Police Department Operations Manual, Rules and Regulations, provides:

> "No employee shall make false reports or knowingly or willfully enter or cause to be entered into any Department books, records, reports, files, any inaccurate, false or improper informa-

tion."

Barret testified that Kennedy told him the prior surveillance should be left out of the report. Kennedy denied telling Barret to omit this information, but did admit that when telling Barret what to include, he did not mention this information because he did not consider it germane. It is undisputed that the plaintiff, who read and initialled the report, was aware of the prior surveillance. As prepared, the report stated that "while on patrol" Officer Barret observed the car straddling the center line and so initiated a traffic stop. Clearly this presented a false and inaccurate picture of a routine traffic patrol and stop when in fact this stop was a subterfuge for making a drug search of two individuals who had been under surveillance by the police.

■ The board also found that the plaintiff violated a departmental order concerning notification of the criminal investigations bureau by failing to notify the bureau of the proposed drug arrests and the investigation prior to its completion. General Order 1405, issued by the chief of police of the Arlington Heights police department, provides:

> "When Officers of the uniformed Bureaus become involved in a felony arrest, search and seizure, a statement and/or a lengthy investigation, the Criminal Investigations Bureau Commander will be contacted and advised. The Criminal Investigations Bureau Commander will assign an Investigator to assist and complete the investigation."

The stated purpose of the rule is to avoid duplication of effort, limit the time expended by uniformed officers, and to lend the necessary expertise to the investigation. It is undisputed that the Bureau was not notified until after the fact of these occurrences, even though detectives were on duty to receive this notice all through the night. Plaintiff contends, however, that this order did not require such notification prior to the occurrences. Clearly, to delay such notification until after an arrest or investigation had taken place would defeat the purposes of the rule. At the hearing the chief of police, Rodney Kath, testified that notification should have been made prior to the occurrences. Officer Skalski also testified that the procedure was to notify the bureau of pending felony arrests. We, therefore, find ample support in the record for the board's finding of this violation.

The board also found that the plaintiff had violated his general responsibility as a police officer to safeguard prisoners in his custody by permitting or directing Gina Copitas to attempt the drug purchase. Plaintiff contends that Copitas did this willingly. But she testified that she was frightened and had been told by Kennedy that her refusal

would place her in deeper trouble. Even assuming that Copitas, a 20-year-old woman who had just been arrested on drug charges in the middle of the night, could be said to have voluntarily consented to make a controlled drug purchase for the police who were holding her, the record establishes that using her was improper. Chief of Police Kath testified that it was improper to use a prisoner in custody for a controlled buy because this could taint the subsequent prosecution and could endanger the prisoner's well-being. We find this charge to have been supported by the evidence.

As we have noted, it is undisputed that the plaintiff permitted the use of Esposito's property (his car and currency) while he was a prisoner. The board found that this violated section 1—329 of the department's Rules and Regulations, which requires that the personal property of prisoners be properly safeguarded. The plaintiff notes that no harm came to the car and the money was returned after its use. But the fact remains that this use of the property was not calculated to safeguard it. Plaintiff also contends that the police acted under the authority of section 107—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 107—8), which authorizes peace officers to order citizens to assist them in making arrests. This statute does not specifically permit the use of a prisoner's property, nor is there any evidence that Esposito was commanded or requested to allow this use of his property. Chief Kath testified that no department order permitted such a use of prisoners' property. Officer William McCratic, who was the custodian of the property, also testified that the property should not have been let out of his control. Thus, the record supports this finding of the board.

The board also found that the plaintiff was guilty of official misconduct in having forcefully entered and searched the residence of Caldarazzo without probable cause and without having obtained a warrant, although no exigent circumstances existed. Section 33—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 33—3(b)) provides that a public officer commits misconduct when in his official capacity he knowingly performs an act which he knows is forbidden by law to perform. Plaintiff contends that he and the other officers had probable cause based on Copitas' alleged statements to them about having been beaten by Caldarazzo. But it is clear from this record that the board chose to believe Copitas' testimony that she told them Caldarazzo had not harmed her and it was Rena Koch who had caused her injuries. On this testimony the board was justified in finding that the officers lacked probable cause to arrest Caldarazzo for battery, the sole ground for probable cause claimed by the plain-

tiff. We, therefore, do not reach the question of whether the police were justified in arresting Caldarazzo in his home without a warrant, based on exigent circumstances.

The board found that the plaintiff violated the department's rule against making false reports in another manner, by causing or permitting Officer Kennedy to charge Caldarazzo with resisting arrest, having full knowledge that no resistance had occurred. This was purely a matter of credibility. The board chose to believe Officer Barret's testimony that there had been no resistance rather than the testimony of the plaintiff and Kennedy. We do not find this credibility determination to have been contrary to the manifest weight of the evidence, and so we will not disturb it.

The board found that a third charge involving false information in the records was supported by the fact that the identity of Rena Koch as one who had struck and pulled the hair of Gina Copitas was omitted from a general case report. That report stated in pertinent part:

> "The offender [Caldarazzo] somehow became aware of the police surveillance and in a rage beat the complainant [Copitas]. Striking her in the face and throwing her to the ground ***."

Officer Kennedy prepared this report and the plaintiff approved it. Clearly the board believed the testimony of Gina Copitas as to who had beaten her. Officer Kennedy himself had testified that he knew Koch was involved in this battery, although he claimed Calderazzo was the main offender. The board's determination was supported by the evidence.

The board also found that the plaintiff had obstructed justice by coercing Copitas to sign a criminal complaint for battery against Caldarazzo when plaintiff knew that Copitas had not been struck by him in the manner specified in the complaint. Section 31—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 31—4(a)) provides:

> "A person obstructs justice when, with intent to *** obstruct the prosecution or defense of any person he knowingly *** plants false evidence [or] furnishes false information ***."

Plaintiff presented Copitas a complaint stating that Caldarazzo had struck her in the face with his fists. The board clearly believed Copitas' testimony that this allegation was false and she had so informed the plaintiff. We do not find this credibility determination to be contrary to the manifest weight of the evidence, and therefore we will not disturb it.

Plaintiff's final contention is that the penalty of discharge was too severe. We have found that all of the board's factual findings were

supported by the evidence and now determine whether those findings provide a sufficient basis for the board's conclusion that cause for discharge existed. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115.) Such cause exists when the findings establish a substantial shortcoming which would render the plaintiff's continued employment as a police officer detrimental to the discipline and efficiency of the police department. (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275.) However, we may overturn the board's determination of this issue only if it is arbitrary, unreasonable, or unrelated to the requirements of the police department. *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115.

The findings we have affirmed establish gross abuse of office by the plaintiff. He and officers under his command falsified police reports, coerced a witness into filing a false complaint, falsely charged the target of their investigation with resisting arrest, and violated a number of department rules designed to protect the rights of citizens and to promote the efficiency of the police department. The plaintiff cites his 15 years of service performed without any prior suspensions or charges. But the fact of his experience bolsters the need for the strongest disciplinary action against a seasoned veteran of the force who would still engage in this conduct. The board found that the law and sound public opinion would recognize the plaintiff's actions as cause for his discharge. In view of the facts before us, we cannot say that the board acted unreasonably or arbitrarily or that the plaintiff's discharge was unrelated to the needs of the police department. Accordingly, we affirm the judgment of the trial court. *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147.

The judgment of the trial court is affirmed.

Affirmed.

MEJDA, P.J.*, and SULLIVAN, J., concur.

*This opinion was concurred in prior to the retirement of Presiding Justice Mejda from the court.