PAUL NORTH, Plaintiff-Appellant, v. De WITT COUNTY SHERIFF'S DE-PARTMENT MERIT COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 4—90—0300

Opinion filed October 25, 1990.

Stanley H. Jakala, of Berwyn, for appellant.

Richard E. Goff, State's Attorney, of Clinton, for appellees De Witt County Sheriff's Department Merit Commission and Herman A. Gardner.

Thomas F. McQuire & Associates, Ltd., of Long Grove, for appellee Thomas L. Farris.

JUSTICE LUND delivered the opinion of the court:

The De Witt County Sheriff's Department Merit Commission (Commission) ordered Sergeant Paul North discharged from the sheriff's department. North filed a complaint pursuant to the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*), seeking to set aside that decision. Plaintiff appeals from the circuit court's affirmance of the Commission's decision. We affirm the judgment of the circuit court.

In September 1987, the De Witt County sheriff filed a complaint alleging that plaintiff had violated the following rules and regulations of the sheriff's department:

"Article VII, A32

*On/Off Duty Conduct—Moral[e]/Efficiency/Image/Public Confidence*

Engaging in conduct, on or off duty, which adversely affects the morale or efficiency of the Department, or in the alternative, engaging in conduct, on or off duty, which has a tendency to destroy public respect for the employee and/or the Department and/or destroy confidence in the operation of the County service.

Article VII, A35

*Insubordination*

Insubordination *** shall include, but [is] not necessarily limited to, any failure [or] deliberate refusal to obey a lawful order given by a superior, or any disrespectful, mutinous, insolent, or abusive language or action toward a superior, whether in or out of the presence of the superior.

Article VII, A8

*Cooperation with Police Investigations*

Failure to fully cooperate with a police investigation.

Article VII, A24

*Truthfulness/Cooperation*

Testifying, making reports, or conducting police business in a less than truthful and/or cooperative manner."

The cause proceeded to a hearing before the Commission. Jerry Ishmael, an Illinois Department of Conservation officer, testified that in the early morning hours of September 6, 1987, he encountered a group of

eight or nine loud, unruly campers in Mascoutin Park. He called the De Witt County sheriff's department to request assistance. Deputy Sheriff John Brannan, a part-time employee, was the first to arrive on the scene. The plaintiff arrived shortly thereafter. Ishmael testified that plaintiff insisted that "he would not throw any people out of the campground if they were intoxicated because he would not jeopardize getting ten days off from his job if they happen to go out and get in a wreck." Plaintiff then turned to Deputy Brannan and said, "You know, some deputies would sell their soul[s] to keep their jobs." Plaintiff also discussed the shortcomings of fellow De Witt County sheriff's department officers, stating that Lieutenant Trummel and Sheriff Farris were both "too immature for their jobs" and that Sergeant Birk, a friend of Officer Ishmael, "had no business running for *** the sheriff's office." Ishmael stated that he was "dumbfounded" by plaintiff's conduct and "didn't feel like [he] could count on him to do his job."

Sheriff Farris testified that he conducted an administrative interview with the plaintiff on September 27, 1987. A transcript of the interview, which contains the plaintiff's testimony, was submitted to the Commission. Plaintiff testified that when he arrived at the scene, Ishmael advised him that he was going to remove a group of drunk and disorderly campers from the park. Plaintiff stated that he "questioned whether we should put drunks out on the roadway." He then asked Ishmael if he had authority to remove anyone from the park. Ishmael was uncertain of his authority. Plaintiff stated that he, Ishmael, and Deputy Brannan agreed not to take action until a State Police officer, who was en route from McLean County, arrived.

Some time later, a State Police officer arrived with a Farmer City police officer who had directed him there at the plaintiff's request. The five officers then proceeded to the campsite. Ishmael and the State Police officer told the campers they could stay in the park for the remainder of the evening if they would remain quiet, clean up their campsite, and leave in the morning.

In response to Sheriff Farris' questions, plaintiff admitted stating that Sergeant Birk had no business running for or being sheriff. Plaintiff denied stating that Sheriff Farris and Lieutenant Trummel were too immature for their jobs and that some deputies would sell their souls to keep a job. Plaintiff also denied making a statement to the effect that "I am not going to take any action due to the fact that I do not want to get another ten (10) days off for bull shit." Plaintiff explained, "I told [Ishmael] that I had to be careful and be sure of what I did or I was subject to receiving another ten days['] suspension."

Sheriff Farris submitted records of prior disciplinary action taken

against the plaintiff to be considered in aggravation if the plaintiff was found guilty. The record reveals that plaintiff had received disciplinary suspensions on three prior occasions in 1987 for offenses ranging from neglect of duty to damaging departmental property due to negligence or inattention. Additionally, plaintiff received a written reprimand in 1987 for failing to answer radio calls while on duty.

On October 23, 1987, the Commission issued a written order reciting the following findings. Plaintiff "did state that Sheriff Farris and Lieutenant Trummel were too immature for their jobs, that Sergeant Birk had no business running for or being sheriff, that he, Sergeant North, would not eject people from the campground because he did not want another ten days off work, and that some part-time deputies would sell their soul[s] for a job." The Commission held that the foregoing comments were not matters of public concern, impaired the administration and operation of the sheriff's department, and violated articles VII A32 (on/off duty conduct), and VII A35 (insubordination) of the sheriff's department rules and regulations. Further, the Commission found that the plaintiff falsely denied that "he made the comments regarding Sheriff Farris, Lieutenant Trummel, attempting to avoid ten days' suspension, and part-time deputies." These false denials were held to constitute violations of articles VII A8 (failure to cooperate with a police investigation), and VII A24 (testifying in a less than truthful and/or cooperative manner) of the departmental rules and regulations. Accordingly, the Commission ordered the plaintiff discharged for "cause" pursuant to section 14 of the Sheriff's Merit System Act (Ill. Rev. Stat. 1987, ch. 125, par. 164).

Plaintiff subsequently filed a complaint for administrative review in the circuit court of De Witt County. The circuit court affirmed the Commission's decision.

Plaintiff raises three major contentions on appeal: (1) the Commission's finding that plaintiff violated the sheriff's department rules and regulations is against the manifest weight of the evidence; (2) even if the Commission correctly found that plaintiff violated the sheriff's department rules and regulations, he cannot be punished because his statements are protected by the first and fourteenth amendments; and (3) plaintiff's actions did not provide the Commission with sufficient cause to justify his discharge.

■ Review of an administrative agency's decision to discharge an employee is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. Second, the court must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does

or does not exist. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 550-51, 426 N.E.2d 885, 887; *Batley v. Kendall County Sheriff's Department Merit Comm'n* (1981), 99 Ill. App. 3d 622, 626, 425 N.E.2d 1201, 1205.

■ Plaintiff first contends that the Commission's finding that he violated the sheriff's department rules and regulations is against the manifest weight of the evidence. We disagree. Rule VII A32 prohibits an officer from "[e]ngaging in conduct, on or off duty, which adversely affects the morale or efficiency of the Department, or in the alternative *** has a tendency to destroy public respect for the employee and/or the Department and/or destroy confidence in the operation of the County service." The plaintiff's tirade against his colleagues included a statement to Deputy Brannan to the effect that "some deputies would sell their soul[s] to keep a job." Taken in context, the statement can only be viewed as a personal affront to Deputy Brannan. The Commission properly concluded that, by insulting other officers while on duty, the plaintiff adversely affected the morale of the department.

Additionally, the record is sufficient to support the conclusion that plaintiff's statements to Officer Ishmael, a member of another law-enforcement agency, tended to destroy public respect for the plaintiff and destroy confidence in the operation of the county service. Officer Ishmael stated that, after hearing the plaintiff's remarks, he "didn't feel like [he] could count on him to do his job." Plaintiff's comments regarding the immaturity of Sheriff Farris and Lieutenant Trummel also constituted an act of insubordination as it is defined in article VII A35.

■ Finally, the record supports the Commission's conclusion that, by falsely denying several of the remarks he made to Officer Ishmael, plaintiff violated articles VII A8 and VII A24, which provide that an officer must fully cooperate with a police investigation and must testify in a truthful and cooperative manner. These findings are a result of the Commission's choice to believe Officer Ishmael's testimony rather than the plaintiff's. However, a mere conflict between the testimony of witnesses will not justify setting aside the findings of an administrative agency. (*Oster v. Police Board* (1974), 22 Ill. App. 3d 403, 408, 318 N.E.2d 34, 37.) This court cannot substitute its judgment for that of the Commission, which was in a better position to judge the credibility of the witnesses. *Albert v. Board of Fire & Police Comm'n* (1981), 99 Ill. App. 3d 688, 691, 425 N.E.2d 1158, 1161.

Plaintiff alternatively argues that, even if the Commission correctly found that his statements violated the sheriff's department rules and regulations, any punishment for these remarks violates the first and fourteenth amendments of the United States Constitution. (U.S. Const.,

amends. I, XIV.) Plaintiff raises three constitutional challenges to his dismissal.

■ First, plaintiff asserts that his employer did not make the required showing that his statements had an adverse impact upon the morale or efficiency of the sheriff's department. A police officer may exercise his right to free speech, as long as he does not impair the administration of the public service in which he is engaged. (*Schafer v. Board of Fire & Police Commissioners* (1979), 69 Ill. App. 3d 677, 680, 387 N.E.2d 976, 979.) Thus, when it is sought to discipline a police officer for exercising his right to free speech, the public interest and the individual interest of the employee must be balanced against the interest of the department or employer. (*Pickering v. Board of Education of Township High School District 205* (1968), 391 U.S. 563, 568, 20 L. Ed. 2d 811, 817, 88 S. Ct. 1731, 1734-35.) Generally, the public employer has the burden of proving that the employee's exercise of his right to free speech has rendered him unfit to continue in the public service, or that the employee's communication has substantially affected the administration of the public service involved. (*Dendor v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 582, 589, 297 N.E.2d 316, 321.) However, the State's burden in justifying a particular discharge varies with the nature of the employee's expression. The courts must reach the most appropriate possible balance of competing interests. *Connick v. Myers* (1983), 461 U.S. 138, 150, 75 L. Ed. 2d 708, 722, 103 S. Ct. 1684, 1691-92.

The United States Supreme Court has historically recognized the government's legitimate purpose in promoting efficiency and integrity in the discharge of official duties and to maintain proper discipline in the public service. (*Connick*, 461 U.S. at 151, 75 L. Ed. 2d at 722-23, 103 S. Ct. at 1692.)

> " 'To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.' " *Connick*, 461 U.S. at 151, 75 L. Ed. 2d at 722-23, 103 S. Ct. at 1692, quoting *Arnett v. Kennedy* (1974) 416 U.S. 134, 168, 40 L. Ed. 2d 15, 41, 94 S. Ct. 1633, 1651 (Powell, J., concurring in part).

■ Morale is undermined and the administration of the public service is impaired when a police officer chooses to inveigh against his fel-

low officers and superiors while on duty. This is equally true when an officer obstructs a disciplinary investigation by falsely denying certain statements. It is not necessary for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships are manifest before taking action. *Connick*, 461 U.S. at 152, 75 L. Ed. 2d at 723, 103 S. Ct. at 1692-93.

■ A public employer may sometimes be required to make a stronger showing of detrimental impact to the public service if the employee's speech substantially involves matters of public concern. (*Connick*, 461 U.S. at 152, 75 L. Ed. 2d at 723, 103 S. Ct. at 1692-93.) However, this is not such a case. The statements plaintiff made to Officer Ishmael are devoid of factual content and could accurately be characterized as the angry grumblings of an employee who has grown familiar to the point of contempt with the departmental disciplinary process. His statements regarding his fellow officers were patently abrasive and of very limited, if any, public interest. As such, the sheriff's department made a sufficient showing of adverse impact on the department.

Plaintiff next contends that he cannot be punished for any statements he made during the administrative interview with the sheriff. Plaintiff reasons: "[T]he order directing the plaintiff-appellant to submit to an administrative interview relating to the plaintiff-appellant's right to speak freely was an illegal order, since it was an infringement upon the plaintiff-appellant's right to address matters of public concern without being subjected to such an interview; therefore, any alleged false statements made during this interview should be held for naught because the interview was illegal from its inception."

■ In the course of a disciplinary hearing, a public employer may require the employee to discuss information reasonably related to his fitness for continued employment. (*Kammerer v. Board of Fire & Police Commissioners* (1970), 44 Ill. 2d 500, 506, 256 N.E.2d 12, 16.) The employee may be fired either on the basis of his answers or for refusing to answer. (*Blunier v. Board of Fire & Police Commissioners* (1989), 190 Ill. App. 3d 92, 108, 545 N.E.2d 1363, 1373.) As the foregoing discussion of plaintiff's remarks indicates, his statements bore a close relationship to his fitness for continued employment. The first amendment provides no shield against punishment for providing untruthful answers to the Commission's questions regarding those statements.

In plaintiff's third constitutional challenge, he asserts that article VII A35, which prohibits acts of insubordination, is unconstitutional on its face. As this contention has been raised only in plaintiff's reply brief, it is waived on appellate review. *In re White* (1982), 103 Ill. App. 3d 105, 109, 429 N.E.2d 1383, 1387-88.

■■■ Finally, plaintiff contends that his statements did not provide the Commission with sufficient cause to justify his discharge. The Commission's power to discharge is derived from the statutory standard of "cause" set forth in section 14 of the Sheriff's Merit System Act. (Ill. Rev. Stat. 1987, ch. 125, par. 164.) "Cause" has been judicially defined as a substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275, 277; *Collins v. Board of Fire & Police Commissioners* (1980), 84 Ill. App. 3d 516, 521, 405 N.E.2d 877, 881.) When, as here, an officer is charged with multiple violations, a single valid finding is sufficient to constitute the basis for entering the order of dismissal. (*Reich v. Board of Fire & Police Commissioners* (1973), 13 Ill. App. 3d 1031, 1033, 301 N.E.2d 501, 503.) An agency's decision as to cause for discharge will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. *Batley*, 99 Ill. App. 3d at 628, 425 N.E.2d at 1207.

■■ In addition to finding the plaintiff guilty of the rule violations at issue in this case, the Commission considered three prior disciplinary suspensions and a written reprimand, all of which were issued in 1987, as factors in aggravation. Although the Commission's finding of cause was amply supported by the plaintiff's extensive disciplinary record, plaintiff now contends that the Commission improperly considered a written reprimand for failing to answer radio calls as an aggravating factor. While prior disciplinary charges may not be used to establish that the plaintiff was guilty of the present charge (*Stanton v. Board of Fire & Police Commissioners* (1976), 37 Ill. App. 3d 108, 111, 345 N.E.2d 822, 825), we know of no authority which states that such charges may not be considered as aggravating factors. The plaintiff's prior reprimand was properly considered in the Commission's finding of cause for discharge.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.