DARRELL COX, Plaintiff-Appellee, v. SHERIFF'S MERIT COMMISSION OF COLES COUNTY *et al.*, Defendants-Appellants.

Fourth District    No. 4—96—0088

Argued July 16, 1996.—Opinion filed August 30, 1996.

Dwight H. O'Keefe (argued), of Brown, Hay & Stephens, of Springfield, for appellants Sheriff's Merit Commission of Coles County and members.

C. Stephen Ferguson, State's Attorney, of Charleston, for other appellants.

Thomas F. Sonneborn (argued), of Illinois Fraternal Order of Police Labor Council, of Springfield, and L. Stanton Dotson, of Mattoon, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Darrell Cox, a sheriff's deputy in Coles County, was cited for a number of disciplinary charges stemming from an incident occurring while he was off duty on March 24, 1995. A hearing was conducted over several days by defendant, Coles County Sheriff's Merit Commission (the Commission), which concluded on June 26, 1995. The Commission demoted plaintiff from sergeant to patrol status and suspended him for 90 days. Plaintiff filed a complaint for administrative review pursuant to the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1992)). The circuit court reversed the Commission, finding all plaintiff's conduct was related to one incident of sick leave abuse. Defendants, Commission, County of Coles (County), Coles County sheriff's department, and James A. Kimball, sheriff of Coles County, appeal from the circuit court's decision. We reverse the judgment of the circuit court and reinstate that of the Commission.

After an internal investigation, Sheriff Kimball filed a complaint

alleging plaintiff had violated the following rules and regulations of the sheriff's department:

> "SECTION IV ADMINISTRATIVE RULES & PROCEDURES
> B. RULES OF CONDUCT
>
> \* \* \*
>
> *4. Unsatisfactory Performance*
>
> Officers shall be prohibited from unsatisfactory performance. \*\*\* Officers shall perform their duties in a manner which will maintain the highest standards of efficiency in carrying out the functions and objectives of the Department. Unsatisfactory performance may be demonstrated by a lack of knowledge of the application of laws required to be enforced; an unwillingness or inability to perform assigned tasks; the failure to conform to work standards established for the officer's rank, grade, or position.
>
> \* \* \*
>
> *8. On/ Off Duty Conduct—Morale/ Efficiency/ Image/ Public Confidence*
>
> An officer shall not engage in conduct, on or off duty, which adversely affects the morale or efficiency of the Department, or in the alternative, engage in conduct on, or off duty, which has a tendency to destroy public respect for the officer and/or the Department and/or destroy confidence in the operation of the Department. To this end, officers shall conduct themselves, at all times, in a manner which is in keeping with the highest standards of the law enforcement profession.
>
> \*\*\*
>
> *10. Neglect of Duty*
>
> An officer shall not neglect his duty. To this end, there shall be no failure to give suitable and prompt attention to the performance of one's duty. \*\*\*.
>
> \* \* \*
>
> *17. Truthfulness/ Cooperation*
>
> An officer shall not testify, make reports or conduct police business in a less than truthful and/or cooperative manner. Officers are prohibited from intentionally making any materially false statements in connection with the performance of official duties.
>
> \* \* \*
>
> *22. The Consuming of Alcoholic Beverages or Controlled Substances*
>
> \*\*\* For purposes of clarification, no employee should consume any type of alcoholic beverage eight (8) hours prior to beginning a shift \*\*\*.
>
> \* \* \*
>
> *32. Abuse of Sick Leave*
>
> Departmental employees shall not abuse their authorized sick

leave by applying for it needlessly. Sick leave will be justified when an employee is too ill to adequately perform his/her assigned duties."

Sheriff Kimball asked the Commission to order plaintiff's discharge.

The Commission conducted a hearing on the complaint. Brian Marvin, a captain with the Coles County sheriff's department, testified he was contacted about purported rules violations by plaintiff. On April 3, 1995, Marvin requested plaintiff report to Marvin's office, which he did on April 4. Marvin requested plaintiff write a report concerning his whereabouts on the morning of March 25 from midnight to 8 a.m., which was the regularly scheduled time for plaintiff to be on duty. Plaintiff was a patrol officer with supervisory duties over the shift.

Plaintiff told Marvin he was not going to deny he was *not sick* when he called in sick on Friday night March 24 for the shift beginning at midnight March 25. In plaintiff's absence from his shift, Sergeant Darimont had to stay over an additional two hours from 2 a.m. until 4 a.m. and Deputy Butler had to come in four hours earlier, at 4 a.m. instead of 8 a.m. Plaintiff was not on duty during his assigned shift from midnight until 8 a.m. on March 25, 1995, and sheriff's department records reflect plaintiff was sick for that shift. The sheriff's department also has a cassette recording and a transcript of the conversation when plaintiff called to report in sick on March 24 and spoke with Sergeant John Clough. In the conversation plaintiff states, "Uh, I got up—feel like I'm going to be sick tonight for sure."

Plaintiff's report, prepared at Marvin's request, stated he had completed a firearms training class at the Mattoon pistol range on Friday, March 24, 1995. Plaintiff wrote, "After the class, while en route home, I stopped at The Place Tavern in Ashmore, Illinois." He continued in his report to say he stayed in Ashmore until 12 or 12:30 a.m. playing pool and socializing.

On the evening of March 24, sheriff's department telecommunicator Kim Anderson met some friends at The Place Tavern for a drink, arriving around 7 p.m. Upon entering, she saw plaintiff standing at the end of the bar drinking from a short green bottle. When plaintiff joined Anderson and her friends, she commented to him he was not supposed to be drinking eight hours before beginning a work shift. Plaintiff replied he was thinking of calling in sick. Anderson refused to let plaintiff use her car phone. Anderson then overheard plaintiff ask a man with him whether he could use the man's car phone to call in sick. When plaintiff returned to the bar, she asked him if he had called the jail and he stated he had. Anderson accompanied

plaintiff to another bar in Ashmore and returned with him later to The Place.

The following week Anderson was asked to visit with Lieutenant Beier in the sheriff's department about plaintiff's whereabouts on the evening of March 24. Earlier on the day she met with Beier, plaintiff called her and inquired if she knew why Beier wanted to talk with her. She replied she did not, but they then discussed that it might be about plaintiff. He asked what she was going to say to Beier and asked her to call him after the meeting with Beier so their stories could match up.

Plaintiff contacted Anderson after she got off work by approaching her in the parking lot adjacent to the county jail. She testified he was sitting in his car with the lights off and then pulled up to her to inquire what was said in her conversation with Beier. She stated he asked her what she had said about him drinking on the evening in question. Anderson also testified to another incident in the parking lot where plaintiff asked her what was being said around the department about him calling in sick.

Amanda Clough testified that when plaintiff approached her and Anderson in The Place on March 24 he had an imported beer bottle in his hand. He asked her for "dirt" on her estranged husband, Sergeant John Clough, also with the sheriff's department. She heard him state he was going to call in sick. Amanda noticed he was gone for awhile and returned, mentioned he had called work, spoken with Sergeant Clough, and told him he woke up sick and vomiting. She overheard plaintiff tell Anderson not to "rat him out."

Plaintiff testified he volunteered to be trained as a firearms instructor for the sheriff's department and after working the midnight shift on March 23, 1995, attended the in-service training class until around 4:30 p.m. He then worked his regular midnight shift on March 24 and reported for another full day of training. After concluding the second day of training, plaintiff testified he went home and tried to sleep but could not do so and went to "The Place" about 5:30 or 6 p.m. He encountered Anderson, a dispatcher for the sheriff's department, and her friends, Amanda and Jeff Reeves. During the evening, plaintiff was with his friend, Steve Childress.

Plaintiff used Childress' cellular phone to call the sheriff's department and report he would not be at work. He testified he called in sick because he was tired, had muscle aches, and did not believe he would be able to perform his duties. Plaintiff testified he was not aware of any rule which required him to be at home when he called in sick.

On June 30, 1995, the Commission issued its written order in

which it found the following charges proved with the applicable rules violations:

"a. [Plaintiff] telephoned the Coles County Sheriff's Department at approximately 8:56 p.m., Friday, March 24, 1995, and reported that he was sick and would not be able to report for his next tour of duty which was to begin at 12:00 a.m., Saturday, March 25, 1995, and end at 8:00 a.m., Saturday, March 25, 1995. [Plaintiff] did not report for work and was absent during his assigned hours. Records indicate Sergeant Steve Darimont filled part of the shift between the hours of 12:00 a.m. and 4:00 a.m. and that Patrol Officer Bob Butler worked the 4:00 a.m. to 8:00 a.m. portion of the shift remaining.

Unsatisfactory Performance
Neglect of Duty
Truthfulness/Cooperation
Abuse of Sick Leave

b. [Plaintiff] was off duty and present at The Place, a tavern located in Ashmore, Coles County, Illinois, both prior to and after telephoning the department and reporting that he was sick and unable to report for work.

Unsatisfactory Performance
Neglect of Duty
Abuse of Sick Leave
* * *

d. [Plaintiff] made statements to another member of the Coles County Sheriff's Department, that being Telecommunicator Kim Anderson who was off duty and present at The Place Tavern that he intended to phone in sick.

Neglect of Duty
Truthfulness/Cooperation

e. Other members of the general public, who were present at The Place Tavern, were aware that he telephoned the department and reported that he was sick and unable to work his shift. Members of the general public also realized that [plaintiff] remained at The Place Tavern after he had telephoned the department and reported that he was too sick to work.

On/Off Duty Conduct—Morale/Efficiency/
Image/Public Confidence

f. [Plaintiff] contacted Telecommunicator Kim Anderson on several different occasions after March 25, 1995, and inquired whether or not anyone had questioned her regarding his calling in sick on March 24, 1995, and advised her that if she was questioned, to contact him so that they could 'get our stories straight.'

On/Off Duty Conduct—Morale/Efficiency/
Image/Public Conduct."

The Commission did not find these violations to be cause for discharge, however, and ordered plaintiff demoted to patrol status and suspended for 90 days without pay.

Plaintiff later filed a complaint for administrative review in the circuit court of Coles County. The circuit court affirmed the Commission's findings plaintiff abused sick leave policies of the Coles County sheriff's department as not contrary to the manifest weight of the evidence. However, the court further found the other conduct found by the Commission to have been improper was directly related to the question of abuse of sick leave and did not constitute independent separate violations of other rules of the sheriff's department. To that extent, the court found the other findings of the Commission to be contrary to the manifest weight of the evidence and reversed the Commission.

The court further found the collective-bargaining agreement between the Fraternal Order of Police and the sheriff and County limited the penalties for sick leave abuse to a suspension for the days in which sick leave was abused as set forth in the collective-bargaining agreement. The court reversed the Commission's demotion of plaintiff and shortened his suspension to one day.

Defendants raise two issues on appeal: (1) the Commission's findings plaintiff violated several sheriff's department rules apart from abuse of sick leave are not against the manifest weight of the evidence; and (2) plaintiff's actions, especially in light of his previous disciplinary record, were sufficient grounds to justify the sanctions imposed.

■ Review of an administrative agency's decision regarding discharge is a two-step process. It requires, first, a determination if the agency's fact findings are contrary to the manifest weight of the evidence and, second, a determination if the findings of fact provide a sufficient basis for the agency's conclusion there is cause for discharge or some other discipline. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 550-51, 426 N.E.2d 885, 887 (1981); *North v. De Witt County Sheriff's Department Merit Comm'n*, 204 Ill. App. 3d 881, 885-86, 562 N.E.2d 365, 368 (1990). An agency decision is only contrary to the manifest weight of the evidence if the opposite conclusion is clearly evident. A reviewing court may not substitute its judgment for that of the administrative agency. If the record contains evidence to support the agency's decision, it should be affirmed. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).

■ Defendants first contend the Commission's findings plaintiff

violated multiple sheriff's department rules are not against the manifest weight of the evidence. We agree. While it is true some of the other violations would not have occurred but for the abuse of sick leave on the part of plaintiff, that does not mean they are not separate violations of sheriff's department rules.

Rule of Conduct 32 prohibits deputies from applying for sick leave needlessly and states sick leave is justified "when an employee is too ill to adequately perform his/her assigned duties." Plaintiff called in sick from a tavern where he had been for several hours prior to the call and where he remained for several more hours after the call. Article 19, section 3, of the collective-bargaining agreement in force at the time of this incident states "Sick leave may be utilized by employees when they are sufficiently ill so that good judgment would determine it best not to report to work ***." Nowhere in the record is there an indication plaintiff was actually ill. Instead, he enjoyed an evening with friends while two other deputies worked extra hours before or after their own eight-hour shifts to cover the loss in manpower by plaintiff's failure to report for work.

Rule of Conduct 10 prohibits a deputy from neglecting his/her duty by requiring him/her to not fail to give suitable and prompt attention to the performance of his/her duties. Rule of Conduct 17 prohibits deputies from making reports in a less than truthful and/or cooperative manner. Plaintiff told Anderson, when he saw her at The Place, that he intended to phone in sick. He also wrote in his written report he went to The Place *after* the firearms training without returning home, which differed from his sworn testimony at the hearing. Plaintiff stated he was going to call in sick when Anderson could see he was not and plaintiff was not completely truthful about his trip to The Place. Thus, plaintiff failed to give proper attention to his duties and to cooperate in official business in a truthful manner.

Rule of Conduct 8 provides a deputy shall not engage in conduct which adversely affects the morale or efficiency of the department or engage in conduct which has a tendency to destroy public respect for the officer or the department or destroy confidence in the operation of the department. Deputies must conduct themselves at all time, whether on duty or off, in a manner which is in keeping with the highest standards of the law enforcement profession. Members of the general public were aware plaintiff telephoned the department and reported he was sick and unable to work his shift and were also aware plaintiff remained at The Place when he said he was too sick to work. Amanda Clough also testified plaintiff asked Anderson not to "rat him out." In addition, Anderson testified plaintiff asked her whether she had been questioned regarding his calling in sick on

March 24, 1995, and asked her what she said so that they could get their stories straight.

Plaintiff's actions and statements on March 24 in The Place caused the image of the department and plaintiff's own image as a sheriff's deputy to suffer. Members of the general public heard him say he was calling in sick but remaining in a tavern and also heard him ask a fellow department employee not to "rat him out." The only realistic inference which can be drawn from this latter statement is plaintiff was asking Anderson not tell anyone in the department what he was really doing while supposedly sick. Plaintiff's actions and comments had a tendency to destroy respect for both plaintiff and the department.

Further, plaintiff's comments to Anderson that he wanted to find out what she told the investigating officers at the department about his actions on March 24 were made in order to make sure he was not caught in a lie while attempting to cover up for his inexcusable actions that night. Asking a fellow department employee to either cover for him or perhaps lie for him would have an adverse effect on department morale.

There was evidence to support the Commission's findings various rules were violated by plaintiff. These violations are not simply part of the violation of sick leave policies. If plaintiff only called in sick when he was not, we would have a case of sick leave abuse. However, plaintiff also told others both within and without the department he was going to call in sick when they could see he was not, continued partying for several more hours after his call, asked a fellow employee not to "rat" on him, and asked the same fellow employee to cover for him by aligning the stories they each told investigators. There is more in this case than an abuse of sick leave. There is an attempt to cover it up and the abuse was flaunted in public.

Interestingly, there is another separate violation which may have occurred the same evening which the Commission found not proved but plaintiff now appears to admit. Originally, the sheriff's complaint against plaintiff alleged plaintiff violated Rule of Conduct 22, which prohibits consumption of alcoholic beverages within eight hours prior to beginning a shift. Plaintiff denied this charge at the hearing before the Commission and the evidence on the subject was conflicting. However, in his brief written for this appeal, plaintiff states the "trigger event" for this entire matter was his decision to go to The Place and "consume alcohol in the presence of others who knew he was scheduled for duty."

Plaintiff argues spending an evening drinking in a bar may have been an unfortunate choice of things to do while too ill to perform

his duties as a sheriff's deputy but a choice which was not spelled out as forbidden. We find this choice to be implausible rather than unfortunate, as anyone too ill to go to work would also be too ill to spend approximately six hours in a tavern.

■ Defendants also contend the Commission's findings as to the proper discipline were not contrary to the manifest weight of the evidence. Plaintiff argues the Commission was limited to applying the provisions of the collective-bargaining agreement which limit discipline for a first offense of abuse of sick leave to a suspension for the days in which sick leave was abused; in this case, one day. We do not disagree with plaintiff's contention regarding discipline for abuse of sick leave. However, we have already found various rules violations were proved besides abuse of sick leave. Therefore, the Commission was not bound to follow the collective-bargaining agreement but was entitled to apply the discipline spelled out in the sheriff's department rules and regulations as discipline for violations of these other rules that were not set forth in the collective-bargaining agreement but in the sheriff's department rules.

In determining the proper discipline for rules violations, the Commission may properly consider a prior disciplinary record. See *Davis v. City of Evanston*, 257 Ill. App. 3d 549, 557, 629 N.E.2d 125, 131 (1993); *North*, 204 Ill. App. 3d at 889, 562 N.E.2d at 370. Plaintiff's personnel file contained a number of prior rules violations. The two most serious violations occurred in 1989 and 1994, respectively. In the first incident, plaintiff, while off duty in a bar with several other deputies, bet several male deputies he could grab the breasts of a female deputy also in the bar and get away with it. Plaintiff grabbed the breasts of the fellow deputy and a physical altercation ensued. Inexplicably, plaintiff received only a written reprimand. In the 1994 incident, also off duty, plaintiff was involved in two physical altercations on the same night with the ex-boyfriend of a female sheriff's department employee. Plaintiff failed to report the incident to the sheriff, who found out about it when the ex-boyfriend sought to file a criminal complaint against plaintiff for battery. He later withdrew his request and plaintiff was suspended for three days.

In addition to these two incidents, plaintiff's personnel file contained five other incidents of rules violations in which he received either a written or verbal reprimand. The Commission considered this record, evidence of plaintiff's 17-year record as a sheriff's deputy and evidence from citizens of Coles County who supported plaintiff. The Commission then consulted a discipline grid which was contained in the sheriff's department rules and regulations for deputies, which sets forth the discipline which can be given for the violation of each

enumerated rule on a first, second or third violation of that rule. Of the rules plaintiff was found to have violated, all except abuse of sick leave provided for suspension and reduction in rank on a first violation. Abuse of sick leave provides for a reprimand or suspension on the first violation. Since plaintiff violated rules which provided for both suspension and reduction in rank on a first violation, the Commission was within its rights to discipline plaintiff in that manner.

Plaintiff stresses the collective-bargaining agreement and the sheriff's department's own rules require the imposition of progressive and corrective discipline and argues a 90-day suspension and reduction of rank is not progressive for a first offense of sick leave abuse. However, article 13, section 2, of the collective-bargaining agreement states, "The employer's agreement to use progressive and corrective disciplinary action does not prohibit the employer in any case from imposing discipline which is commensurate with the severity of the offense." While an instance of first-time sick leave abuse merits a one-day suspension, the Commission could readily find a third-time violation of "On/Off Duty Conduct—Morale/Efficiency/Image/Public Confidence" warranted a demotion in rank and a 90-day suspension. The progressive disciplinary grid found in the sheriff's department rules shows the only disciplinary option as dismissal as the result of a third violation. Due to the previous rules violations cited earlier, plaintiff was already on his second or third violation of some of the rules.

Plaintiff was a 17-year veteran of the sheriff's department and should have known waiting until the last minute to call in sick would strain the manpower capabilities of the sheriff's department. He also knew he was scheduled to work two midnight shifts during the course of the firearms training he volunteered to take. Plaintiff argues his 17 years of good service, most of them as a sergeant, should count for more when weighing discipline. However, there have been several incidents of progressive discipline during his 17 years which did not serve to correct plaintiff's behavior. Length of service and rank sometimes call for more severe punishment, however. See *Crittenden v. Board of Fire & Police Commissioners*, 139 Ill. App. 3d 154, 162, 487 N.E.2d 115, 121 (1985).

The sheriff asked for plaintiff's discharge and the Commission apparently could have ordered his discharge under the progressive disciplinary grid for third violations. However, the Commission apparently wanted to acknowledge plaintiff's long and mostly satisfactory career, but send a strong message behavior such as his would not be tolerated. Therefore, the Commission stated it was suspending him for 90 days and demoting him one rank with the hope he could

"salvage" his career as a valued employee of the department. The discipline imposed by the Commission was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court is reversed and the order of the Commission is reinstated.

Reversed; Commission's order reinstated.

GREEN and STEIGMANN, JJ., concur.